[Civ. No. 1230.    Third Appellate District.—December 28, 1914.]

## JOHN BARRY, Appellant, v. WILLIAM SUTTER, Respondent.

ACTION TO QUIET TITLE—BOUNDARY LAND—QUITCLAIM DEED—PRESUMP-
TIONS IN FAVOR OF—CHARGE OF FRAUD AND MISTAKE—BURDEN OF
PROOF.—The presumptions are in favor of the validity of a quitclaim
deed to a certain strip of land between adjoining owners, where the
deed was executed with the formality and solemnity usually observed
in such transactions; and in an action by the grantor to quiet title
to the land, in which the deed is attacked upon the ground of fraud,
mistake, failure of consideration, and misrepresentation in its execu-
tion, the burden of proof is on the plaintiff as to the issues affecting
the purported conveyance.

ID.—INSUFFICIENCY OF EVIDENCE TO OVERTHROW DEED.—In such a case,
where there were no confidential relations between the parties, and
there was no evidence from which a rational inference could be
drawn that any misrepresentations were made to the grantor, that
any undue influence was exercised, that he did not have the deed
read to him or did not thoroughly understand its terms, that it was
not, in other words, his entirely voluntary act, made understandingly
with the intention to convey to the grantee therein named whatever
interest he had in the premises included in the description; but at
most it may be inferred that the grantor was somewhat advanced in
years, not very strong physically, and that he acted without the
advice of his attorney to whom he generally applied for assistance
in matters of such moment, the evidence falls short of justifying an
appellate court in reversing a finding in favor of the deed, and a
judgment in favor of the defendant for his costs should be upheld
on appeal.

APPEAL from a judgment of the Superior Court of the
City and County of San Francisco.   B. V. Sargent, Judge
presiding.

The facts are stated in the opinion of the court.

Samuel C. Wiel, for Appellant.

Peter A. Breen, for Respondent.

BURNETT, J.—The controversy is over a narrow strip of
land, constituting a part of Mission block number 84 in the
city and county of San Francisco.   There are three counts

in the complaint. The first is in the usual form of an action to quiet title; the second and third counts seek to set aside a deed from John Barry, the original plaintiff, to William Lyons, respondent's grantor, on the ground of fraud, mistake, failure of consideration, and misrepresentation. Said instrument is in the form of a quitclaim deed and purports to convey by metes and bounds the land described in defendant's answer. The answer disclaims all interest in the property described in the amended complaint except so much thereof as is embraced within that described in the answer and specifically denies the allegations of the second and third counts of the complaint in reference to the execution of said deed and alleges that it was freely and voluntarily made with full knowledge of the facts. After the commencement of the action, the original plaintiff died and John Barry, his son, was substituted as plaintiff. On November 28, 1911, by stipulation, plaintiff had entered a "judgment in part," quieting his title to all of the property described in the amended complaint except the portion thereof embraced in the answer, "said judgment being without prejudice to any rights which the plaintiff or said defendant William Sutter may have in the land or premises in the answer described, as to which last mentioned land and premises the cause was adjudged to remain at issue to be tried upon the law and facts applicable thereto." The adjoining owners acquired their properties in 1873 from a common grantor. A year later they built their houses and occupied them without dispute or question from 1874 to 1910, over thirty-five years. In 1910 one of the adjoining owners sold his piece to William Sutter, defendant and respondent herein. He had the land surveyed and found that the boundary line described in the deeds of 1873 was three feet and seven inches from the line which had been recognized as such and upon which the houses had been built. Whereupon, possession was demanded by respondent of said strip and this action was begun soon thereafter.

Appellant, in addition to his attack upon said quitclaim deed, claims that the facts bring the case within the rule announced in *Dundas* v. *Lankershim*, 155 Cal. 692, [102 Pac. 925], and other cases, holding that the line actually located and marked on the ground must be accepted as the true boundary regardless of its accuracy as shown by subsequent

26 Cal. App.—16

measurements, but especially and emphatically is it declared that we have the condition pointed out in *Helm* v. *Wilson,* 76 Cal. 486, [18 Pac. 608], as follows: "Besides, it appears that in 1884 the defendant, with the knowledge and acquiescence of the plaintiff, erected valuable improvements upon the disputed strip. It has been held that, even without any agreement more than is implied from these acts, if two persons trace their dividing line, and both recognizing it as such, one goes forward with the knowledge and acquiescence of the other, and makes valuable improvements, so valuable as to work great injury to the party making them if the line be disturbed, the other will be estopped from afterward alleging such mistake as shall deprive the builder of his improvements, and especially if the party seeking to disturb the line knew, at the time the improvements were made, all that he subsequently learned or if he had the means of knowledge." Therein is stated what is deemed to be a well-established principle, but we think it is not necessary to determine whether it has application to the case in hand, as we feel constrained to uphold the judgment on the other ground suggested.

After alleging that said deed was signed by John Barry, Sr., and that it purported to convey to W. H. Lyons a portion of the property in controversy, the complaint proceeds: "That said signature was procured without the presence or advice of his attorney or of any other person upon whom plaintiff is or at any time herein was accustomed to rely for the transaction of his affairs. That the plaintiff was unable to read and did not read said deed and did not know the contents thereof at the time he signed the same, and that said deed was not read over to him and that he would have been unable by reason of the aforesaid to understand the purport or effect if it had been read over to him." Furthermore, that defendant falsely represented to him that he was not thereby conveying any of his property to said Lyons and that he would not be occasioned any loss thereby; that said deed was not acknowledged by him, that it was wholly without consideration and "that plaintiff at the time of said deed was unconsciously ignorant of the fact that said deed conveyed to W. H. Lyons a portion of the real property first herein described, and of the fact that said deed conveyed to said W. H. Lyons property of which the plaintiff was the rightful owner."

It is not disputed, and indeed cannot be, that the presumptions are in favor of the validity of the deed and the burden of proof was, of course, upon plaintiff as to the issues affecting the purported conveyance of the title. There is, however, no evidence from which a rational inference can be drawn that any misrepresentations were made to the grantor, that any undue influence was exercised, that he did not have the deed read to him or did not thoroughly understand its terms, that it was not, in other words, his entirely voluntary act made understandingly with the intention to convey to the grantee therein named whatever interest said grantor had in the premises included in the description. At most, we may infer that the grantor was somewhat advanced in years, not very strong physically and that he acted without the advice of his attorney to whom he generally applied for assistance in matters of such moment. These circumstances, however, fall short of justifying an appellate court in reversing the finding in favor of a deed apparently and presumably executed with the formality and solemnity usually and naturally associated with such transactions, there being no confidential relation between the parties.

All the evidence upon the subject was offered by plaintiff and is substantially as follows: Witness Lyons testified that immediately after he discovered from the survey that there was an error in the Barry line he informed Barry that there was a mistake and that the latter did not say anything; "he didn't have anything to say. I did not say anything to him about making a deed to me, or a quitclaim, or moving the line. I didn't at any time ask him for a deed of that property, and I do not know how he came to make the deed that he did make to me."

Augusta Barry, daughter of the grantor, testified that she could not say whether any money passed at the time of the execution of the deed as she was not present when it was executed. She was asked whether her father was sick at the time but an objection was sustained, the court, however, stating that plaintiff would be allowed to prove, any fact bearing upon the incompetency of the grantor. Counsel for appellant thereafter stated: "If your honor will give me a chance I will prove the fact that he was an old man, who had been out of work for a long time; he was getting weak; he was of sound mind, as far as matters go. He left matters in my hands as

an attorney when matters came up; in this instance, without having any consultation at all, he was induced to sign a deed signing away half of his house; that is what I am trying to prove in this connection." The court then stated: "You get at this properly, and perchance you can get this testimony before the court; that the plaintiff was unable to read, and did not read the said document; did not know the contents of said document; if you can prove that it was not read to him, and he didn't know anything about it; that he was signing a document he didn't believe he was signing; those are all material facts. But this witness does not seem to know anything about it." Nothing, however, of importance was elicited beyond the fact that her father was not able to read English, the witness stating that she did not know "anything about the manner in which the deed was drawn up, or whether he was advised by anybody at all on the subject."

In response to the question: "Did Mr. Sutter, the defendant in this action, in your presence, ever say anything to you or anything in your presence in reference to the matter in dispute?" she replied: "Yes sir. He claimed my father was on his property, and he wanted it. That is about all. He claimed father was on his land. He did not say anything at all about the execution of a deed."

Mr. S. C. Wiel testified that Mr. Barry was accustomed in all matters to come to the former's office and ask advice on everything he did. "He never did anything in connection with that property, or any other property without first coming to see me, . . . And he never, independently of his own will, acted on anything at all. I know of my own knowledge, I think I can testify to that fact, that he received nothing for the deed."

Mr. Wiel's testimony is probably the most significant of the showing made in behalf of plaintiff but it is apparent that he was largely stating conclusions. It does not appear whether he was present at the execution of the deed. If he was there it is strange that he did not testify further concerning it. If he was not present, his declaration that Mr. Barry received nothing for the deed must have been the result of hearsay. But according to his evidence the fullest credit it amounts to is nothing more than that no money was paid to the grantor of the deed. Not only did it fail to affect or touch the question whether there were other considerations for the conveyance,

but there was not even any attempt on the part of appellant to show that Mr. Barry at the time of the execution of the deed was not of sound mind, that any misrepresentations were made, that he was unduly influenced or influenced at all in the transaction, or that, in other words, the deed was not the result of his free and spontaneous volition.

Such being the condition of the record we can see no other course than to affirm the judgment. It would seem to be a matter of indifference whether the judgment be considered one of nonsuit or upon final submission.

As to this the record is somewhat uncertain, it concluding as follows:

"Mr. Wiel: That is our case. I would like to argue my point of mistake, that these parties acted upon a mutual mistake, that the boundary line was according to a survey instead of according to their actual location. Mr. Breen: Is that your case, Mr. Wiel? Mr. Wiel: That is my case.

"The Court: I think you are out of court. Mr. Breen: If that is the plaintiff's case I want to make a motion for nonsuit.

"Mr. Wiel: (after discussion) I will submit the case and take your honor's ruling. Mr. Breen: I will submit it also.

"The Court: Judgment for defendant."

At any rate, the cause was submitted on the evidence offered by plaintiff, findings were made and filed and we find no sufficient reason to disturb the judgment.

Judgment having been entered, as we have seen, in favor of plaintiff as to all the property except the portion described in defendant's answer, the latter alone presenting the question at issue, and the said deed not having been successfully assailed and conveying from plaintiff's predecessor in interest the land described in said answer, defendant was certainly entitled to his costs. This is all that was awarded him and the judgment is therefore affirmed.

Chipman, P. J., and Hart, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on January 27, 1915, and the following opinion then rendered thereon:

THE COURT.—In response to appellant's petition for rehearing, we deem it sufficient to say that there is in the record

no more evidence of mistake than of fraud. We cannot assume that because the grantor was occupying the property he did not intend to convey it to the grantee. That would be a dangerous and unauthorized principle of construction to apply to an instrument that is presumed to express the intention of the parties. In the absence of a clear showing that he intended otherwise, one must, of course, be held to the plain meaning of the words he uses in the conveyance of real property.

The petition for rehearing is denied.