[Civ. No. 13258. Second Dist., Div. Three. Jan. 30, 1942.]

ARTHUR DAVIES et al., Plaintiffs and Respondents, v. CARRICK W. SYMMES et al., Appellants; M. GREEN-SPUN, Intervener and Respondent.

Laurence B. Martin, Samuel Reisman and Clark Miller for Appellants.

David J. Keily and Wm. P. Mealey for Plaintiffs and Respondents.

Feinfeld & Feinfeld for Intervener and Respondent.

SHINN, J.—Appeal by defendants from a decree in favor of plaintiffs and intervener in an action to quiet title to 4½ acres of land. Appellants appear by counsel other than those who represented them in the court below.

The principal ground relied upon for reversal is that appellants were denied the right to amend their joint answers to the complaint and the complaint in intervention. While we have concluded that no error was committed in ruling on the applications to amend, the facts of the case are sufficiently peculiar to require a somewhat extended statement. In considering the applications to amend, the inquiry went beyond mere matters of procedure and involved the validity of the proposed defenses.

The complaint to quiet title was filed March 14, 1939. Defendants Carrick W. Symmes and wife (herein referred to as defendants) answered April 14, 1939, denying plaintiffs' title and asserting title in themselves. The complaint in intervention was filed June 8, 1939, alleging that intervener Greenspun held an oil lease with option to purchase the land, executed by plaintiffs on August 8, 1938; that an oil well had been drilled under the lease and was nearly completed. Defendants answered the complaint in intervention, again asserting title in themselves and denying all adverse rights of plaintiffs and intervener. A motion for early trial was granted and the case was set for November 27, 1939. On November 21, 1939, defendants gave notice of an application to amend their answers. The proposed amended answers to the complaint and the complaint in intervention contained substantially the same matter. The motion was presented in the law and motion department and was denied with leave to renew the same before the trial judge; the trial was continued for 30 days. On December 26, 1939, defendants gave notice of a motion to file amended answers differing in material respects from those first proposed, and they presented the motion to the trial judge when the trial was opened January 2, 1940. The record shows that the motion was denied for the following reasons: that no facts were alleged which were unknown to defendants or their counsel when the original answers were filed; that there had been unexcused delay in tendering the amendments; that allowance of the amendments would necessitate a continuance of the trial to the prejudice of the rights of plaintiffs and intervener and, finally, that the proposed defenses, as limited by defendants' opening statement, were insufficient. We should state here that the question of the right to amend the answers was presented and ruled upon at the close of the trial as well as at the beginning. This is an important fact in our consideration of the merits of the appeal.

The second proposed amended answers, which differed from those first proposed in respects to be noticed later, alleged that defendants had purchased the land from plaintiffs in August, 1937, for $4,750, paying $1,000 in cash and giving a note and trust deed on the land for $3,750, upon which they later paid $500; that in December, 1937, defendants had reconveyed the land to plaintiffs, and in that connection three separate grounds for rescission of their deed were alleged or

attempted to be alleged, namely, that Dr. Symmes (Carrick W. Symmes) on the date of the deed was mentally incompetent; that plaintiffs had procured the deed through fraud, and in addition thereto that Dr. Symmes was suffering from mental weakness and worry and because thereof conveyed the land and caused his wife to convey it without consideration.

Upon the opening of the trial defendants' counsel offered the amendments and stated at length what they expected to prove should the amendments be allowed. No reference was made to the defense of actual fraud, and there was a definite abandonment of the defense of incompetency. A clear intention was manifested to rest the defense upon the alleged mental weakness of Dr. Symmes and inadequacy, but not total want, of consideration for the reconveyance. This was evidenced by several colloquies between court and counsel. The discussion culminated with the following statement by the court: "There is no intimation of any fraud or improper actions on the part of plaintiffs. Apparently, the only thing is that Dr. Symmes got sick and became scared that he was going to die. That is insufficient." This statement of the court correctly summarized counsel's statement of what the defendants expected to prove and the argument that had been made in the presentation of the application to amend. Counsel throughout the discussion acquiesced in the court's statements of the issue tendered for decision. The ruling which followed, disallowing the amendments, was made under no misapprehension on the part of the court or counsel as to the withdrawal of two of the pleaded defenses and the abandonment of the contention that the deed was given without any consideration. Sufficient reasons for the abandonment of these defenses will be disclosed in the course of our discussion.

The remaining allegations which it was contended constituted a defense to the action were in substance the following: that Dr. Symmes became ill mentally and physically to such an extent that he was unable to exercise ordinary care and judgment in the handling of his own affairs; that he believed himself to be suffering with cancer, was on the verge of a nervous breakdown, that he would have to curtail his activities and remain under the care of medical advisers; that he believed that he would be unable to meet the expense of medical care and attention or to pay the balance of the purchase price of $3,250 on the property, although in fact he

was well able to do so; that he believed he was more likely to die than to recover and in order to recover it would be necessary for him to get rid of all his worries; that in case of his death his wife would not be able to carry on if she still had and retained said real property; that these matters preyed on his mind until he almost suffered a nervous breakdown, and that all of such facts were known to plaintiffs; that under these circumstances he conveyed the property to plaintiffs for no consideration, although the property at that time, with improvements placed thereon by him, was worth not less than $10,000 and was subject only to an indebtedness of $3,250 in favor of plaintiffs. It was further alleged that plaintiffs had voluntarily offered to extend and carry along indefinitely the said indebtedness of defendants Symmes in the amount of $3,250; that they suggested to Dr. Symmes that his condition of health might not be as bad as he believed it to be and that it was possible that his medical advisers were in error, and further suggested that he take no action to dispose of the property. It was then alleged that Dr. Symmes still urged plaintiffs to accept the conveyance of said property, which they agreed to do, promising at the same time to hold title for defendants and to reconvey it to them upon payment of the trust deed indebtedness if Dr. Symmes recovered within 12 or 15 months. They alleged that they made the conveyance in reliance upon the promise and agreement on the part of plaintiffs to hold title for them and to reconvey it upon the conditions stated; that Dr. Symmes' health did improve; that defendants offered to pay the $3,250 plus taxes and interest and demanded a deed; that plaintiffs refused to accept the money or give the deed and that defendants on February 8, 1939, served on plaintiffs, and on February 14, 1939, recorded, a notice of rescission of the conveyance. It was alleged that they had deposited with the clerk at the time they filed their original answer the sum of $3,000 for payment to plaintiffs for a reconveyance.

In the first proposed amendments presented in the law and motion department no attempt was made to allege fraud. Defendants had had more than seven months since the filing of their original answers in which to consider their defenses. The court at that time pointed out the insufficiency of the proposed answers in that connection, and it would appear that defendants shortly thereafter made the discovery that they had been deceived. Accordingly, the amendments tendered at

the time of trial contained an additional paragraph reading as follows: ''That plaintiffs herein never had any intention of doing any of the matters and things mentioned herein relative to holding said property for these defendants and conveying same to them as alleged herein, and their representations in that respect were false as they well knew.'' This paragraph constituted the only attempt made in the answers to allege a fraudulent purpose on the part of plaintiffs.

It is quite obvious that if these defenses were meritorious and they intended to rely upon them, defendants have suffered through loss of the right to prove them. It is not questioned that the defense of mental incompetency was sufficiently alleged. We shall assume, without deciding, that the bare allegation that a promise was made without intention to keep it would be sufficient to charge actual fraud, in the absence of any allegation that the promise was made with a fraudulent intent and purpose to induce the making of the conveyance.

Allowance of the amendments would have made it necessary for plaintiffs and intervener to take a continuance in order to prepare for trial of the new issues. This would have resulted in embarrassment and possible loss to them. Their title would have remained under a cloud for some additional time and this might easily have interfered with their oil development program. But as these defenses were not pressed, we need not consider them further.

There remained a third alleged defense, namely, that Dr. Symmes was suffering from great mental weakness which seriously impaired his business judgment, and that as a result thereof he conveyed away his property for a grossly inadequate consideration. Defendants endeavored to state a case falling within the rule which allows equitable relief in such cases. Typical situations calling for the application of the doctrine are to be found in *Shaffer* v. *Security T. & S. Bank* (1935), 4 Cal. App. (2d) 707 [41 Pac. (2d) 948], and cases there cited, which are relied upon by defendants. These cases are of interest in our inquiry only because they point out essentials of a case calling for relief under the above rule which are conspicuously absent from defendants' pleaded case.

If, therefore, this remaining defense was insufficient, there was no error in refusing permission to amend the answers.

It would have been futile to receive proof of facts which were insufficient to constitute a defense to the action. ██ Even had sufficient facts been pleaded to establish a good defense, if the new issues were such that allowance of the amendments would have interfered with a prompt trial of the case in a manner fair to all parties, refusal of the right to amend would not have been an abuse of discretion in the absence of a satisfactory excuse for the delay in making application to amend.

Upon either hypothesis the rulings must be sustained.

In denying leave to amend, the court ruled that the proposed pleading stated no valid grounds for rescission. But, as we have stated, a similar ruling was made at the close of the case. At that time certain evidence had been placed before the court by the defendants which, in our opinion, satisfactorily proved that the pleaded defense had no merit whatever. We shall therefore discuss the pleading and the proof together in judging whether defendants have suffered any injustice.

██ In the trial plaintiffs introduced in evidence the deed of defendants to plaintiffs dated December 29, 1937. It recited that the deed was given and was accepted in full satisfaction of the trust deed indebtedness. This was a valuable consideration. Intervener introduced his oil lease and option to purchase dated, respectively, August 8, 1938, and August 3, 1938. Defendants then offered in evidence the deposition of plaintiff Arthur Davies, taken at their instance before they filed their answer. In this deposition Davies testified to four or five conversations with Dr. Symmes before the deed was executed, which we find it unnecessary to state except in substance. According to this witness, Dr. Symmes stated that he had been advised that he was suffering from cancer and that he was undergoing expensive treatment therefor; that he repeatedly and persistently requested Davies to take back the property and cancel the trust deed indebtedness; that Dr. Symmes stated emphatically that he wished to rid himself not only of the property itself but also of the nursery business which he had undertaken to conduct thereon and which he had found to be extremely burdensome. Other reasons of similar import were given. Davies testified in detail as to his repeated attempts to dissuade Dr. Symmes from his plans and to his own reluctance to accept the conveyance. In brief, his testimony, if unimpeached, dispelled any

suspicion of bad faith on his part. Defendants also, for reasons best known to their counsel, called a witness Byrens, who testified that he had had several conversations with Dr. Symmes nearly a year after the date of the deed, in which he asked that Dr. and Mrs. Symmes execute statements to identify themselves as the grantors in the deed; that Dr. Symmes expressed his willingness to do so, stated that he had purchased the property from plaintiffs but could not "make the grade," no longer had any interest in the property, and that the statements would be executed when his wife returned from a visit. The statements were later found to be unnecessary. The testimony of these witnesses stood uncontradicted. Defendants also offered in evidence three letters written by Dr. Symmes and a notice of rescission signed by Dr. and Mrs. Symmes. The letters read as follows: "Sunday Night. My dear Mr. Davies: I am told by my physicians that I have a fighting chance to get well if I give up down here and get out, and can get rid of all worries. I now see no chance of ever paying for the Gardena property, neither can I depend on Mr. Lands to do so, if I am out of the picture. If you will take my deed for the property and all stationary fixtures thereon, I feel that I must face it and take my loss and get rid of worries. My treatments are almost prohibitive, and I'm losing ground fast,—almost a nervous wreck. May I please ask you to do this one kind act, at once. I shall then tell Lands he is welcome to all the potted plants, and for you and he to come to terms on rental of the property. You cannot lose, and it will help me out personally, and relieve my mind so that if the worst comes to the worst, my wife will be able to carry on without troubles at Gardena. May I ask you to please make out the necessary papers and forward to us at once, for in so doing I feel that perhaps I can again have a chance. I thought I could carry on, but find I was mistaken. Please let me hear from you at once. Yours truly Dr. C. W. Symmes. I owe nothing save 33.90 to the Water Co. and 25.00 to Duncan, all other bills are paid, and these I will gladly pay you when you accept the deed."

"12/30/37. My dear Mr. Davies: Your letter with papers received this morning. I have gone before a notary with Mrs. Symmes and filled in the statement of identity, also signed the deed as directed. As to Mr. Lands, I will say that he has never entered into the picture as far as the land

is concerned, consequently there can be no claim in any title. Any agreement I have had with him, as he put it himself, put him in the light of a hired hand without pay. I will say, however, that after we got into it and his wife quit work he has drawn on me to the extent of about $10.00 per week for living expenses, and this part I was never intended to do. I still wish him well, so if you can arrange with him satisfactorily to stay on, I shall give him my end of all potted plants,—his ½ of all expenses paid by me, and more,—cancel his personal debt to me in money advanced. What more can I do? All I ask is my $500.00 tractor from the place. I enclose $33.90 to the Water Co. which you will please see is paid to them direct. This is for pipe line on the N. end of the acreage which they installed. I shall write Mr. Lands regarding the Duncan $25.00 bill, and tell him that in view of the fact that I give him all these things, I think he should pay this bill. However, will you please see Mr. Duncan, and tell him that if Lands does not pay the bill quite soon, for him to send statement to me and I will pay same. I thank you for your kindness to me, and great consideration toward me in my late troubles, and I assure you I am going to make a gallant fight to get back on my feet. Yours very truly, Dr. C. W. Symmes.''

''1/6/38. My dear Mr. Davies: So far Mr. Lands has not been in to see me; neither have I felt equal to call on him. Any arrangement you can make with him will be alright with me, as I feel the sooner I get this thing off my mind the quicker I can pull my nerves together and perhaps pull out of this. If it is going to help Lands in anyway and proper payments can be made with Lands for same, he can have the tractor back to work the ground. I leave it all up to you. Yours very truly, Dr. C. W. Symmes.''

The notice of rescission signed by appellants February 8, 1939, was couched in legal phraseology and stated as reasons for the rescission mistake, duress, menace, fraud, undue influence, no consideration, insufficiency of consideration, and that the consideration failed in whole or in part. No reference was made therein to the alleged agreement to reconvey the property.

At the close of the evidence intervener was allowed to file a supplemental complaint alleging that he had tendered to plaintiffs $13,500, the price at which the land had been optioned to him by plaintiffs. Defendants were allowed to

file their amended answer to the supplemental complaint in intervention, as theretofore proposed, under a stipulation that plaintiffs and intervener might move to strike out the special defenses pleaded therein. This course was followed and the court struck out all allegations which were not in the original answer. This ruling, as we shall point out, was not erroneous.

Defendants endeavored to plead a case of deceit and imposition practiced upon Dr. Symmes, but in their pleading they went too far and destroyed their own theory. And what they failed to plead to exclude them from the doctrine they rely upon, they proceeded to prove. That doctrine has no application to the facts which defendants themselves developed. The letters of Dr. Symmes clearly showed that he was determined to rid himself of the property. They were devoid of any suggestion that it was to be held for the benefit of defendants and was to be reconveyed, or that Dr. Symmes wanted to get it back in any event. While not conclusive, they furnished strong proof of the fact that he did not rely upon or expect or even have in mind any reconveyance of the property. They expressed his purpose in making the deed as if it was intended to be an unqualified and unconditional conveyance of the land. He could not have more definitely stated his real purpose in disposing of the property than he did in his letters and other declarations. Certainly he acted spontaneously, willingly, and advisedly, without confusion in his ideas or uncertainty in his purpose.

The fact that a man becomes worried upon being advised that he is suffering from a serious malady and sets about to rid himself of debt and annoying business responsibility in order that he may devote himself unreservedly to the restoration of his health does not indicate an impairment of his mentality. Upon the contrary, it shows something more than ordinary good sense. And when we consider the matter of consideration which Dr. Symmes received for his deed we must remember that he was not concerned with mere dollars. It was alleged, and evidence was offered by defendants to prove, that he was a man of wealth. He was concerned about his health. The nursery business which he had undertaken had proven expensive and it worried him. He rid himself of it for sufficient reasons; he recovered his health. Who can say that he was foolish or improvident or that the consideration which he received was grossly or at all inadequate?

In the face of the written declarations of Dr. Symmes,

and other evidence introduced by defendants, the court could scarcely have done otherwise than strike out the new matter which had not already been abandoned. How could it have been held that Dr. Symmes had been imposed upon or over-persuaded in a transaction which he conceived and practically forced upon plaintiffs? The trial judge thought that defendants not only pleaded but also proved their conveyance to have been given freely, understandingly, and for a sufficient consideration. That is the view of the case which we entertain. It is not at all a case calling for equitable relief. Either plaintiff Arthur Davies was a scoundrel practicing deceit upon a trusting friend or he was an accommodating friend seeking no advantage for himself. He could not have been both. Defendants, insinuating that he was the former, were at some pains in their pleading and proof to show that he was the latter. They must abide by the result.

 We might rest our approval of the rulings upon the ground which we have stated but we prefer to go further. Let us suppose that sufficient facts had been alleged to show a case of imposition, such as defendants attempted to allege, or defenses of incompetency and actual fraud. In any of these events plaintiffs and intervener would have been obliged to ask for a continuance. They could not have been compelled to go to trial without ample time in which to prepare their case.

There is much authority for the proposition that one seeking to amend under such circumstances must make a showing excusing any want of diligence in making the application, and that where he fails to do so, denial of the privilege of amending is not an abuse of discretion. (*Williams* v. *Youtz* (1918), 178 Cal. 107 [172 Pac. 383] ; *Manha* v. *Union Fertilizer Co.* (1907), 151 Cal. 581 [91 Pac. 393] ; *Bank of America* v. *Goldstein* (1938), 25 Cal. App. (2d) 37 [76 Pac. (2d) 545].) Of course the fact that an amendment will necessitate a continuance does not necessarily furnish a sufficient reason for refusing the right to amend, but it does where there has been long and unexcused delay such as we are considering. Aside from the usual claim that counsel had been busy in other matters, the sole excuse was that counsel who filed the original answers believed them to be broad enough to permit defendants to prove grounds for rescission until he was advised by associate counsel shortly before the trial that they were insufficient for that purpose. From the proceedings

which we have described it would appear to be somewhat more than doubtful that it was ever intended to rely seriously, or at all, on the defenses of fraud and incompetency. But if we take the explanation at its face value it will be apparent that it was planned from the beginning to prove these grounds for rescission without pleading them. Whether they were added as an afterthought or under a plan to take opposing counsel by surprise, we find ourselves in agreement with the views of the trial judge as to the insufficiency of the excuse offered for the delay. Lest it be thought that the muddled situation described must have resulted from youth and inexperience of counsel, we might add that no such contention is or could well be made upon the record.

■ It is now contended that defendants should have been allowed to prove their defenses under a denial of plaintiffs' title and an allegation of title in themselves. They rely upon the rules stated in *Sparrow* v. *Rhoades* (1888), 76 Cal. 208 [18 Pac. 245, 9 Am. St. Rep. 197]; *Bird* v. *Murphy* (1925), 72 Cal. App. 39 [236 Pac. 154], and like cases, that where it is sought to recover possession of property or to quiet title thereto, the defendant is not bound to anticipate the source of plaintiff's title and may prove, without pleading the fact, that it depends upon a void conveyance. This is an exception to the rule that fraud, undue influence, want of consideration, and like defenses must be pleaded. It rests upon the supposition that the defendant does not know, and it excuses him from ascertaining, the source of plaintiff's title before he answers. The effect of it is to permit proof of the void character of a conveyance without the framing of issues by comprehensive pleadings. Such a departure from established procedure is tolerated only through necessity and in exceptional cases. ■ But the rule relied upon could have no application to the facts of the case before us. Defendants had purchased the land from plaintiffs and had reconveyed it to them. They knew that plaintiffs' title depended upon the latter deed, which they sought to rescind. They had the affirmative duty of proving the invalidity of their deed; otherwise they could not have defeated plaintiffs' title or established their own. See *Barry* v. *Sutter* (1914), 26 Cal. App. 240 [146 Pac. 527]. Under customary practice they would have filed a cross-complaint for rescission and proper issues would have been framed by the pleadings. But whether they proceeded by cross-complaint or by affirmative answer, they could not prove grounds for rescission without pleading

them. Their deed was voidable at most. (*More* v. *Calkins* (1890), 85 Cal. 177 [24 Pac. 729].)

■ It is fundamental that wherever fraud constitutes an element of a cause of action or of an affirmative defense or is the foundation of a right sought to be established, it must be pleaded. (*Wetherly* v. *Straus* (1892), 93 Cal. 283 [28 Pac. 1045]; *Burris* v. *Kennedy* (1895), 108 Cal. 331 [41 Pac. 458]; *Estate of Yoell* (1913), 164 Cal. 540 [129 Pac. 999]; *Virginia etc. Co.* v. *Glenwood Lumber Co.* (1907), 5 Cal. App. 256 [90 Pac. 48].) It is equally true of the other alleged defenses. ■ The offered evidence was correctly excluded as being outside the issues, and the motion to strike portions of the answers was properly granted.

■ Many of the findings are defective. They are to the general effect that allegations of the answers "which are in conflict with the foregoing findings are untrue." Appellants call our attention to the obvious insufficiency of these findings without making mention of the good ones. Nevertheless, we have read all of them and find specific and sufficient findings upon all material issues in addition to the faulty ones. This is enough to support the judgment. (*Turner* v. *Turner* (1921), 187 Cal. 632, 635 [203 Pac. 109].)

There are no other points calling for discussion.

The judgment is affirmed.

Schauer, P. J., and Wood (Parker), J., concurred.