[Civ. No. 3382.  First Appellate District, Division Two.—July 8, 1920.]

## THE FARMERS EXCHANGE NATIONAL BANK (a Corporation), Appellant, v. HELEN E. DREW, Respondent.

[1] HUSBAND AND WIFE—DIVORCE—MORTGAGE GREATER THAN VALUE OF COMMUNITY PROPERTY—SUBSEQUENT ACQUISITION BY HUSBAND FREE FROM ENCUMBRANCES — INTEREST OF FORMER WIFE.—Where at the time of divorce the community property was subject to a valid mortgage executed to secure money used by the husband in the conduct of his business, which business was, presumably, conducted for the benefit of the community, and the rights of the parties therein were not adjudicated by the divorce decree, the fact that such property thereafter came into the hands of the husband clear of encumbrances under the distribution of the assets of a given corporation, representing an asset of the estate left by his father, cannot give the divorced wife a right to a one-half interest therein free and clear of the encumbrance it carried at the time of the divorce.

[2] ID.—DISSOLUTION OF COMMUNITY—PROPERTY TO BE DISTRIBUTED—EXCESS OF INDEBTEDNESS OVER VALUE OF PROPERTY—REPRESENTATION AS TO EXISTENCE OF COMMUNITY PROPERTY.—The community property to be distributed upon a dissolution of the community by divorce is the residue which remains after the discharge of the community obligations; and, inasmuch as all community property is liable for the husband's debts, and subject to his control and disposition, where the total indebtedness of the husband exceeds the aggregate value of all of the community property, a representation by him to his wife that there is no community property is substantially correct.

[3] ID.—FALSITY OF REPRESENTATION—ABSENCE OF DAMAGE — RIGHT OF RESCISSION.—Conceding that, under a strict technical construction, the representation of the husband that there was no community property was false, inasmuch as there was in existence some community property, although the same was of a value considerably less than the amount of the debts for which it was liable, the wife was not damaged by reason of her having entered into a separation agreement under which she received no part of the community property, in reliance upon such representation; and, under such circumstances, there is no right of rescission.

1. Power of legislature to restrict husband's right to alienate or encumber community property, note, 36 **L. R. A. (N. S.)** 1040.

Liability of community property for debts, notes, **Ann. Cas.** 1913A, 319; 19 **L. R. A.** 233.

APPEAL from a judgment of the Superior Court of Los Angeles County. Paul J. McCormick, Judge. Reversed.

The facts are stated in the opinion of the court.

Leonard, Surr & Hellyer for Appellant.

Victor T. Watkins and Anderson & Anderson for Respondent.

LANGDON, P. J.—This is an appeal by the plaintiff from that portion of the judgment awarding to defendant a one-half interest in certain real property in Los Angeles. The action was brought for the purpose of quieting title to this property. Defendant answered claiming an interest in the property, as community property of herself and her former husband, Arthur L. Drew.

Defendant and Arthur L. Drew were married in 1895, and in 1903 the husband purchased the property in controversy, and built a residence thereon, which was occupied by the husband and wife as their home until about the time of their divorce. It appears that before October 28, 1910, defendant and her husband had been having domestic difficulties and were contemplating divorce. On that date an agreement was executed by the defendant, Helen E. Drew, and her husband, by which he agreed to pay to her $150 per month for the support of herself and child, and in which she agreed that she would make no demand upon him other than for this amount. On December 19, 1910, a decree of divorce was obtained by the husband in Nevada. The record in this divorce action was introduced in evidence in the present case by Helen E. Drew, the defendant, and it appears therefrom that the complaint in that action, filed by the husband, contained an allegation that there was no community property; and the answer of Helen E. Drew specifically admitted this allegation, and the court found that all the allegations of the complaint were true. It is, however, defendant's contention in the present action that she was induced to sign the agreement of October 28, 1910, above referred to, by which she was to receive $150 each month, and was induced to sign the answer in the divorce action admitting that there was no community property, be-

cause of the false representation of her husband that there was no community property. She alleged, in the present action, and the trial court found, that she relied upon such representation and that such representation was false. The trial court proceeded evidently upon the theory that there had been no division of the community property by the decree of divorce, and that the parties to the divorce action, therefore, became tenants in common of the community property; that the agreement for $150 a month for maintenance of the wife in lieu of all other property rights was obtained by fraud on the part of the husband, and so could be set aside, and defendant, Helen E. Drew, restored to her one-half interest as tenant in common in this property, which the court found was community property.

Without deciding whether or not the judgment in the divorce action foreclosed all inquiry into the question of the community property rights of the parties, and assuming, for the purpose of this decision, that the trial court was correct in its theory upon this point, let us examine the situation to see whether even under such a theory the defendant is entitled to any interest in the property in controversy.

The trial court was not deterred in reaching its conclusion by the fact that no offer to restore the consideration paid under the maintenance agreement had been made by Helen E. Drew when she sought to rescind the said agreement because of fraud, although it appears in the record, uncontradicted, that Drew paid under such agreement $5,557.82 for the support of the divorced wife, and $545.30 to her on account of the maintenance of her child, and that $2,602.52 was paid by him for the up-keep of the house which they were permitted to occupy without the payment of rent. Added to this, the testimony is that Drew gave various amounts in cash at different times, over and above the amounts set out above, of which he kept no record, and that the house which Mrs. Drew occupied, rent free, was of the rental value of $100 a month during this period of years.

The fact that the suit was not between the parties to said agreement, but was between one of the parties thereto and a subsequent purchaser of the property, which purchaser would not have been entitled to a return of such consideration to it under any circumstances, and that the person en-

titled to a return of the consideration upon a rescission was not a party to the action, may possibly be of weight in connection with this point so ably urged by the appellant. We need not, however, discuss this question here, nor many of the other interesting questions of law and fact presented by the record, as a discussion of all of them would extend this opinion unduly and unnecessarily. The appellant discusses in its briefs the question of the alleged misrepresentations, whether of law or fact; the question of the defendant's laches in asserting her claim; the question of the estoppel to assert the existence of community property because of the admissions in the pleadings in the divorce action, and many others. We are of the opinion, however, that it is necessary to discuss only one question of law involved. That question goes to the merits and is the one first logically to be considered, i. e., whether or not at the time of the divorce between the defendant Helen E. Drew and her husband there was any community property in which, under any circumstances, defendant might have claimed an interest.

To ascertain this, it will be necessary to consider in detail the uncontroverted evidence regarding the financial affairs of Arthur L. Drew at the time of the divorce. Practically all of the testimony upon this subject was given by Arthur L. Drew himself, who was not a party to this action, and who appeared on behalf of the defendant, Helen E. Drew. The property in controversy was purchased by Drew in 1903. The purchase price was $4,500—$400 of which amount was paid by a check drawn upon his personal funds. There is no dispute that to the extent of the $400 the property was community property. The remaining $4,100 of the purchase money was borrowed by Arthur L. Drew from a bank, upon the note of said Drew, indorsed by his mother. There is a contention made by appellant that this $4,100 was separate property of Arthur L. Drew, because from other evidence in the case it appears that the bank loaned the money upon the credit of Mr. Drew's separate property which he had inherited from his father and which property was held by the Drew Company, and included stock in the creditor bank; and that the bank also made the loan upon the credit of Drew's mother, who also owned stock in the said bank. Appellant relies upon the authority of *Flournoy*

v. *Flournoy,* 86 Cal. 292, [21 Am. St. Rep. 39, 24 Pac. 1012], and *Dyment* v. *Nelson,* 166 Cal. 40, [134 Pac. 988] from which it appears that it is not necessary for separate property to be actually pledged to secure a loan in order that the loan so obtained shall become separate property; but that it is sufficient if the loan be made upon the credit of the separate property. However, whether this $4,100 be considered as community or separate property of the husband would not affect the conclusion which we have reached, and so we may consider such money for the moment as community property and thus meet the respondent's position upon this point. After the purchase of the ground, Drew constructed a house upon the property at a cost of about $15,000. This was in 1903. The cost of construction of the house was paid by Drew out of the profits of his business, and from money borrowed from the bank. At the time of the purchase of the property Drew was engaged in the contracting and building business, and during the year 1908, after the house had been completed, he was engaged in building a large dam in the San Bernardino Mountains. This construction work extended over several years and caused him to become heavily involved financially. In order to carry on this work, it became necessary for him to borrow money from time to time, and on August 24, 1908, he borrowed $5,000 from the Drew Company, and executed his note therefor, securing said note by a mortgage of the property in controversy then occupied by himself and wife as their home. This mortgage was executed to secure what money he already owed to the company, and also to secure all other sums that he might thereafter borrow, not to exceed in the aggregate $20,000, exclusive of the $5,000 note set forth in the mortgage. The Drew Company—the mortgagee —was the company holding the assets of the estate of Drew's father. Drew and his brothers and mother owned all the stock in said company, which stock represented their proportionate shares of said estate. Part of the money secured by this mortgage to the Drew Company was borrowed during the year 1908, prior to making the mortgage, and the balance was borrowed subsequently, but all of it was borrowed while the defendant, Helen E. Drew, and Arthur L. Drew were living together as husband and wife. All the money so borrowed was used in the contracting business of

Drew and notes were from time to time executed by him to the Drew Company to evidence the loans secured by the mortgage. These notes were as follows: $5,000, dated August 24, 1908; $5,000, dated September 21, 1908; $10,000, dated November 28, 1908, upon which $4,500 was paid, leaving a balance of $5,500, and $3,000, dated February 15, 1909. All of these facts appear clearly from the testimony of the defendant's own witness, Arthur L. Drew, and from the testimony of the officers of the Drew Company, and are nowhere contradicted.

It would appear, therefore, as asserted by the appellant, that the finding of the trial court that the mortgage was executed "for the purpose of taking said place from [Helen E. Drew], and of hindering her in the assertion of her claims thereto" (which finding follows the allegations of the answer), is unsupported in any way by any evidence, or by any possible inference from the evidence. The husband had the right to mortgage the community property, even though we concede that no part of the money used for the house was his separate property. The money secured upon the mortgage was used to pay the community debts—that is, the debts incurred by the husband in the conduct of his business, which business was, presumably, conducted for the benefit of the community. For these debts, the community property, clearly, was liable. (*Oregon Imp. Co.* v. *Sagmeister,* 4 Wash. 710, [19 L. R. A. 233, 30 Pac. 1058]; Ballinger on Community Property, 161, 162; *Schuyler* v. *Broughton,* 70 Cal. 282, [11 Pac. 719]; *Tibbetts* v. *Fore,* 70 Cal. 242, 245, [11 Pac. 648]; *Adams* v. *Knowlton,* 22 Cal. 283.) The husband had the right to mortgage the property. (Civ. Code, sec. 172; *Bay City Building Assn.* v. *Broad,* 136 Cal. 525, [69 Pac. 225].) From the evidence it appears that the property was mortgaged for nearly $23,000 and interest, amounting in all to over $25,000, at the time of the execution of the contract of October 28, 1910, between the husband and wife, and at the time of the divorce. The defendant does not contend that the property was ever worth more than $25,000 (and the court found its value to be about $20,000). So it appears that at the time of the divorce it was mortgaged to the Drew Company for more than its full value. Therefore, defendant had no substantial interest left in this property as community property or

otherwise. If the Drew Company had foreclosed upon the mortgage, no question could possibly have arisen regarding Mrs. Drew's rights in connection with the property. However, after the divorce in 1910, Helen E. Drew requested of her former husband that she and her child might be permitted to live in the house. He told her that she might do so, provided that she would move out when there was an opportunity to rent or sell the same. She moved into the property under this arrangement, and has occupied it continuously ever since, refusing to vacate upon the repeated demands of Arthur L. Drew, and later, of the purchaser of the same. During all this time Drew or the Drew Company paid the taxes and repairs and insurance upon the property. In 1912, Drew being unable to pay the debt secured by the mortgage, the mortgagee, instead of foreclosing the equity, accepted from Drew and his second wife a deed to the property in payment of the mortgage and had the mortgage released of record. In 1913, the mother of Arthur Drew having died, it became desirable to distribute the assets of the Drew Company to Drew and his brothers, the only stockholders. In this distribution, the stock of other corporations held by the Drew Company and the real estate held by it were transferred to the stockholders in proportion to their respective holdings in said company. Arthur L. Drew accepted the property in controversy as a part of his share, at a valuation equal to the amount it had cost the company to acquire it—something over $25,000. After the distribution was agreed upon, deeds were issued by the company to the Drew brothers, transferring the properties allotted to each, and it was agreed that the properties allotted to Arthur L. Drew, as his proportionate share, should remain in the Drew Company, and all the stock of said company should then be transferred to said Arthur L. Drew by his said brothers, except one share each to qualify them as directors. In other words, Arthur L. Drew, from the time of the distribution of the assets of the Drew Company, used that company as a convenient business arrangement for holding title to his separate property inherited from his father and mother. Under this arrangement the title of the property in controversy remained in the Drew Company until April 12, 1915. At that time the Savings Bank of San Bernardino desired to have other security for a note

of $5,000 signed by Arthur L. Drew which it held and which was at that time secured by a pledge of some of Drew's stock in the Drew Company. Accordingly, the Drew Company—which was in reality Arthur L. Drew—executed a deed of trust to the property in controversy to secure a new note signed by Arthur L. Drew for $5,000, which note was given by him in payment of his old note for a like amount, and the collateral securing the former note was returned to him. This deed of trust contained a provision for future advances, and under this provision the bank later (May 7, 1915) advanced to Arthur L. Drew the further sum of $1,500.

It was upon the sale under this deed of trust that the plaintiff regularly purchased the property in October, 1917, for $7,120. [1] Unless this defendant had some interest or equity in the property at the time it was conveyed to the Drew Company in payment of its mortgage, she can under no possible theory have any interest in the property now. As we have stated, the property was mortgaged to the Drew Company for an amount greater than the highest value placed upon it by defendant's witnesses; the mortgage was given to secure community debts, contracted to carry on the business of the husband of the defendant. The fact that long after the divorce the property again came into the hands of Arthur L. Drew clear of encumbrances under the distribution of the assets of the Drew Company, representing an asset of the estate left by his father, cannot give the defendant a right to a one-half interest in it free and clear of the encumbrance it carried at the time of the divorce. The property, when received by Arthur Drew from the Drew Company as his separate property, was distinctly different from the property owned at the time of the divorce, in so far as defendant's rights in it were concerned. The accident of physical identity has nothing to do with the legal questions involved. In other words, defendant's rights in the property, if any, are measured by the value of her equity in the property as it stood at the time such rights came into existence (which would be the time of the divorce); and it appears that at that time the property was mortgaged in excess of its value. Any award to her under any circumstances would have to be in relation to these facts, and subject to her share of the burden of this mortgage.

48 Cal. App.—29

[2] Lest it be supposed that any injustice was done to Helen E. Drew in any way by a failure to award to her any community property in the divorce action, and that the judgment of the trial court in the present action in a broad way corrects this injustice, we shall refer to the evidence further in order to demonstrate that the record shows that after subtracting the community debts from the community assets there was no community property left at the time of the divorce in which she could have been given an interest, and that her husband's representations to her that there was no community property were substantially true. The only property which could possibly have been considered to be community property under any of the testimony in the record was the following: The property in controversy— highest valuation, $25,125; 100 shares Nuevo Land Company stock, market value, $10,000; Phillips Contracting Company stock, worthless; contracting outfit, highest valuation, $3,000; an automobile and minor miscellaneous articles, value $500—making a total of $38,625.

On the other hand, Mr. Drew had borrowed $19,000 from the Drew Company; $8,500 interest was due upon this amount at the time of the divorce; he owed $5,000 to the bank, and $17,000 plus interest to his mother's estate, making a total of nearly $50,000 in obligations. Generally speaking, all obligations contracted during marriage are community debts. (6 Am. & Eng. Ency. of Law, 2d ed., 339; 21 Cyc. 1676, 1681; *Oregon Imp Co.* v. *Sagmeister*, 4 Wash. 710, [19 L. R. A. 233, 30 Pac. 1058]; *Calhoun* v. *Leary*, 6 Wash. 17, [32 Pac. 1070].) It is also well settled that all community property is liable for the husband's debts, and subject to his control and disposition. (*McDonald* v. *Badger*, 23 Cal. 394, 399, [83 Am. Dec. 123]; 21 Cyc. 1676; *Schuyler* v. *Broughton*, 70 Cal. 282, [11 Pac. 719].) It is obvious, therefore, that all of this community property of the Drews was liable for the debts of the husband and that not only did the mortgage indebtedness on the property in controversy then exceed its value, but the aggregate value of all of the community property did not equal the total indebtedness of the husband. Therefore, as a matter of practical mathematics, there was no community property, and Drew's representations to his wife were substantially correct. The community property to be distributed upon a dis-

solution of the community by divorce is the residue which remains after the discharge of the community obligations. (*Frankel* v. *Boyd,* 106 Cal. 608, 614, [39 Pac. 939].)

[3] Furthermore, although it be conceded that under a strict technical construction, the representation was false, because, accurately speaking, there was in existence some community property albeit the same was of a value considerably less than the amount of the debts for which it was liable, nevertheless, the defendant has not suffered any damage by reason of the contract induced by said technically false representations. And this is because, as stated in *Frankel* v. *Boyd, supra,* the community property to be distributed upon the dissolution of a marriage by divorce is the residue of such property after payment of the community debts. Under this rule the defendant could have been awarded nothing, even though the contract had not been executed. Unless damage can be shown by reason of the alleged false representations, there is no right of rescission. (*Bailey* v. *Fox,* 78 Cal. 389, 398, [20 Pac. 868], *Marriner* v. *Dennison,* 78 Cal. 202, [20 Pac. 386]; *Morrison* v. *Lods,* 39 Cal. 381.)

We do not consider it necessary, as stated before, to discuss at length the question of whether or not, even had there been a loss suffered by the defendant by reason of the false representation as to the existence of community property, this representation would have been such an one as to avoid the contract entered into between them, because we are of the opinion that under all the facts the representation was, in effect, true. However, in passing, we call attention to the case of *Champion* v. *Woods,* 79 Cal. 17, [12 Am. St. Rep. 126, 21 Pac. 534], where it was decided that such representations are generally representations of law, and a wife contemplating divorce has no right to rely thereon. However, as stated, we need not decide whether under the facts of this particular case such representation, if false, would have furnished ground for relief, for, we think, the evidence shows the representation to have been substantially true at the time. Mr. Drew testified that his representation was made in good faith, and that as the community debts exceeded the community assets, he believed he was stating the truth in telling his wife that there was no community property. There is nothing in the record to contradict this.

On the contrary, we believe that the record clearly shows that the only property which the husband had at the time of the divorce, over and above the community debts, was his stock in the Drew Company, which, it is undisputed, came to him as an inheritance from his father and mother. This being true, the defendant, Helen E. Drew, had no right at the time of the divorce, under any circumstances, to any community property, and, therefore, has no interest now in the property in controversy.

The portion of the judgment appealed from is reversed.

Brittain, J., and Nourse, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 2, 1920.

All the Justices concurred, except Shaw, J., Wilbur, J., and Sloane, J., who were absent.