[L. A. No. 17819. In Bank. July 30, 1942.]

TONY ALTRAMANO et al., Respondents, v. W. W. SWAN et al., Defendants; LILLIAN J. SWAN, et al., Appellants.

James B. Fredericks for Appellants.

Frederick M. Kraft for Respondents.

EDMONDS, J.—The appellants, Lillian J. Swan and Juanita Swan Foreman, her daughter, were sued by the judgment creditors of W. W. Swan in an action to subject an Oldsmobile automobile and certain Postal Certificates to the payment of the judgment.

The complaint contains five counts. In the first three of them, the respondents assert that W. W. Swan fraudulently transferred property owned by him to Lillian J. Swan, his wife, and Juanita Swan Foreman, his daughter. In the fourth count, the judgment creditors claim that W. W. Swan transferred the property in controversy to his wife and daughter in trust for his benefit, and that he is the "actual, equitable and beneficial" owner of them. The fifth count claims the right to relief upon a different theory. In making the transfers to his wife and daughter, say the respondents, Swan received no consideration, "and by reason thereof a construc-

tive trust has been created and the actual, equitable and beneficial ownership of said properties is in W. W. Swan."

By way of answer, the appellants deny that W. W. Swan ever owned any interest in the automobile or the Postal Savings Certificates and they assert that they own all the property which is mentioned in the complaint.

W. W. Swan and Lillian J. Swan married in 1909 and have lived together since that time. In 1938, he executed a contract guaranteeing the prize money in a rodeo contest. The judgment against him was rendered the following year in an action upon this contract.

According to the testimony of Swan, he has been steadily employed since 1924 as an investigator. In that year he received a reward of $6,250 and made a gift of the entire amount to his wife. Since his marriage, and particularly in the years from 1936 to 1940, he has given her most of his earnings "to maintain her home, raise her children up, pay her bills, doctor bills, and a lot of other things." At the time he signed the contract upon which the respondents recovered judgment, he had no debts.

In 1936 Mrs. Swan opened a savings account in a Los Angeles bank. Other deposits were subsequently made to her credit and in April, 1940, she withdrew the balance of $2,500 and gave this amount to her daughter. Her explanation of the gift was that she has never made a will, and she gave her daughter the money "to secure her".

The daughter corroborated her mother's testimony concerning the money given to her and said that she purchased Postal Savings Certificates with it. These certificates she placed in Mrs. Swan's safety deposit box.

In addition to the testimony of these witnesses, who were called under the provisions of section 2055 of the Code of Civil Procedure, other evidence was offered in support of the allegations of the complaint. According to the records of the bank, the savings account was opened with the deposit of a check for $500, drawn on another account of Mrs. Swan in the same bank, and $100 in currency. From April, 1936, to February of the following year, $648.50 from the salary checks of Mr. Swan was deposited in it.

The automobile, it appears, was purchased by Mrs. Swan in 1937 upon a conditional sale contract. A representative of the corporation from which it was purchased testified that his company required Mr. Swan, who had an income, to sign

the contract although Mrs. Swan signed the purchase order and the car was licensed in her name. An employee of the finance company to which the contract was assigned testified that the bookkeeping code indicated all payments upon it were made by W. W. Swan. On cross-examination, however, he admitted that he had never seen W. W. Swan in the office and "we don't record any identification" of the person who makes a payment on a contract but only the name of the person for whose benefit the payment is made.

Following the denial of the appellants' motion for a nonsuit, they offered evidence tending to show the source of the money which was deposited in the bank account. Mrs. Swan testified that, in 1920, she sold a house at a profit of $2,000. The money to purchase this house and an additional $4,000 was given to her by her brother. She also received $6,250 as a gift from her husband. During these years she often kept money in two or three banks and also, since the time of the bank failures in 1929, in a safety deposit box. She explained that about three days before she opened the savings account in question, she loaned her sister $2,500, and many of the deposits shown to have been made in the account were of money sent by her sister in partial payment of the loan.

Mrs. Swan said that her husband turned over his pay check, averaging $160 per month, to her. That amount was not always sufficient to meet their household expenses, which she always paid in cash. If any of his checks were deposited in the savings account, either she had paid household expenses of an equivalent amount from her separate funds, or his check was used by her to replace money sent to her by her sister, and which had been used to pay household bills. No one but herself had any right to withdraw money from any of her bank accounts.

Concerning the automobile, she said that in 1931 she bought an Auburn which was registered in her own name. In 1937, she bought the Oldsmobile, turning in the Auburn and paying $500 in cash which she took from her safety deposit box. The balance of the purchase price was represented by the conditional sale contract which has been mentioned. Payments on this contract were made by her, either in currency or cashier's checks, with money she kept in her safety deposit box. According to her testimony, no one other than herself has any interest in the automobile.

W. W. Swan testified that he signed the contract at the

request of the dealer but he made no payments upon it. He did not know where his wife's bank accounts were carried and he never attempted to exercise any control over them. He knew she had two safety deposit boxes, but he never put anything in either of them, nor had he given her anything to put into them for him; at no time had he given her anything to hold in trust for him. Mrs. Swan does not own or control any property to which he has any legal or equitable title, and he has never claimed any right in property held by her.

At the conclusion of the taking of evidence, the respondents abandoned the first three counts of their complaint, expressly admitting a failure to prove any facts establishing a fraudulent conveyance. But the court found, upon the other counts of the complaint, that Mr. Swan transferred the bank account and automobile to his wife and daughter without consideration and that he acquired these properties in their names. Additional findings are that the transfers involved no change of possession and that the properties have remained in the actual possession and control of W. W. Swan; that the transfers of the bank account and automobile by Mr. Swan to his wife and daughter were made in trust; that the appellants now hold this property in trust, the actual equitable and beneficial ownership being in him; that Mrs. Swan did not acquire the money in the bank account as her sole and separate property; that Mr. Swan contributed unstated sums of money to that account; and that Juanita Swan Foreman did not acquire the $2,500 as a gift.

Upon these findings the court rendered judgment that Mr. Swan is the owner of the Postal Savings Certificates and a 75 per cent interest in the automobile, the respondents being entitled to a lien upon this property for the amount of the judgment.

Attacking this determination, the allegations in count four, say the appellants, that the transfers from W. W. Swan to them "were made in trust" is a mere conclusion of law stating no cause of action. For the same reason they challenge the assertions in the fifth count that no consideration for the transfers passed between W. W. Swan and the appellants and "by reason thereof a constructive trust has been created." And they argue that if this count may be said to allege facts, rather than conclusions, the facts do not state a cause of action, for a married man's transfer of property

to his wife or daughter without consideration does not, in itself, give rise to a constructive trust. Finally, the appellants claim, there is no evidence to support the findings of the trial court that any of Mr. Swan's money was deposited in the bank or used to purchase the automobile or that he had any interest in either of them.

The general averment that the legal ownership of the property is in the appellants, and the equitable ownership in W. W. Swan, the respondents maintain, is an allegation of ultimate fact sufficient to state a cause of action in their behalf. They further urge that where title to property is taken in the name of one person and the consideration is paid by another, the one acquiring title holds the same in trust for the person paying the consideration. In any event, the respondents contend, even though a trust may not have been established by the evidence, yet the trial court had the right to rely upon the presumption that all property acquired during the married life of the parties is community property and to disbelieve the testimony offered in behalf of the appellants as to the character of the property. They argue that since some of the money represented by W. W. Swan's salary checks was deposited in the bank account, there was a commingling of funds which justified the trial court in treating all the property as belonging to the community.

In reply, the appellants assert that any discussion of community property law is immaterial, as the complaint does not charge that either the automobile or the money with which the Postal Savings Certificates were purchased was community property, and the court did not find for the respondents upon that ground. But if the respondents now adopt that theory, say the appellants, they are entitled to the benefit of the statutory provision that property acquired by a married woman by an instrument in writing is presumed to be her separate property. (Civ. Code, § 164.) They also rely upon section 15 (a) of the Bank Act as establishing a presumption that the bank account was Mrs. Swan's separate property. (Stats. 1909, p. 87, as amended by Stats. 1935, p. 512; Deering's Gen. Laws, 1937, Act 652.)

Considering first the contentions of the appellants relative to the sufficiency of the complaint, the allegation that the transfers from W. W. Swan to his wife and daughter "were made in trust," that they now hold the property "in trust" for him and that the "actual, equitable and beneficial owner-

ship'' of the property is in him sufficiently pleads an express trust for his benefit. (*Knapp* v. *Knapp*, 15 Cal. (2d) 237 [100 P. (2d) 759].) Under modern rules of pleading, general allegations of ownership are sufficient (*South San Bernardino etc. Co.* v. *San Bernardino Nat. Bank*, 127 Cal. 245 [59 Pac. 699]; *Wendling etc. Co.* v. *Glenwood etc. Co.*, 153 Cal. 411 [95 Pac. 1029].)

But the fifth count falls far short of stating a cause of action. A constructive trust does not arise upon the transfer of property from a husband to a wife without consideration. Under section 440 of the Restatement of the Law of Trusts, ''Where a transfer of property is made to one person and the purchase price is paid by another, a resulting trust arises in favor of the person by whom the purchase price is paid, except as stated in sections 441, 442, and 444.'' Section 442 reads: ''Where a transfer of property is made to one person and the purchase price is paid by another and the transferee is a wife, child or other natural object of bounty of the person by whom the purchase price is paid, a resulting trust does not arise unless the latter manifests an intention that the transferee should not have the beneficial interest in the property.'' ''The fact that the transferee is a wife, child or other natural object of bounty of the payor is more than merely a circumstance tending to rebut the inference of a resulting trust. It is of itself a circumstance sufficient to raise an inference that a gift was intended, and the burden is upon the payor seeking to enforce a resulting trust to prove that he did not intend to make a gift to the transferee.'' (Comment b.) California cases supporting this rule include *Quinn* v. *Reilly*, 198 Cal. 465 [245 Pac. 1091]; *Hitchcock* v. *Rooney*, 171 Cal. 285 [152 Pac. 913]; *Lezinsky* v. *Mason Malt Whiskey Distilling Co.*, 185 Cal. 240 [196 Pac. 884]; *Hamilton* v. *Hubbard*, 134 Cal. 603 [65 Pac. 321, 66 Pac. 860]; *Rhea* v. *Thomson*, 115 Cal. App. 466 [1 P. (2d) 1091]; *Daniel* v. *Sisnero*, 109 Cal. App. 8 [292 Pac. 218]; *Rossiter* v. *Schultz*, 43 Cal. App. 716 [185 Pac. 997]. To state a cause of action attacking a transfer made by a husband to his wife upon the theory of a resulting trust, one must allege either that he intended to create a trust or that he intended that the wife should not have the beneficial interest in the property. (*Quinn* v. *Reilly, supra.*)

The only evidence tending to prove the allegations of the fourth cause of action is that (1) $648.50 from the salary checks of W. W. Swan was deposited in the savings account

of Mrs. Swan, and (2) the conditional sales contract evidencing the agreement to pay the $400 balance on the Oldsmobile was signed by him; and (3) the payments on the conditional sales contract were credited to W. W. Swan by the assignee of the contract. But disregarding the testimony of Mrs. Swan and her witnesses, from which the court might well have concluded that the money in the bank account and the automobile were her separate property, the evidence presented by the respondents does not prove that Mr. Swan owned property which he transferred to his wife and daughter without consideration.

In the first place, he made no transfer to his daughter. But of more importance is the fact that the evidence does not even suggest that he ever had any separate property. On the other hand, the respondents concede that, in 1924, he gave his wife the $6,250 which he received as a reward, and they do not attack her testimony concerning the gifts of money from her brother. So, unquestionably, she acquired a substantial amount of separate property. If some of Mr. Swan's earnings were deposited in the bank account or paid on the automobile, there was no transfer of his money or property; at most, there was a commingling of a small amount of community property with the wife's separate property. Under such circumstances, the court might have found that $648.50 and an undivided interest in the automobile are the community property of Mr. and Mrs. Swan. But there is no evidence whatever to support the findings of transfers by Mr. Swan of his property to his wife in trust for his benefit.

Upon proper pleadings and evidence a creditor may reach the community property, with the exception of the wife's earnings, to satisfy the debts of the husband. (*Spreckels* v. *Spreckels,* 116 Cal. 339 [48 Pac. 228, 58 Am. St. Rep. 170, 36 L. R. A. 497]; *Van Maren* v. *Johnson,* 15 Cal. 308; *Lesser* v. *Pomin,* 3 Cal. App. (2d) 117 [39 P. (2d) 451]; *Farmers' etc. Bank* v. *Drew,* 48 Cal. App. 442 [192 Pac. 105]; *Civ. Code* § 168.) But to uphold the judgment upon the theory that it subjects community property to the payment of the judgment would allow a recovery upon a cause of action not pleaded by the creditors and against which the appellants have not had an opportunity to defend.

The judgment is reversed.

Gibson, C. J., Shenk, J., Curtis, J., Carter, J., and Traynor, J., concurred.