T.C. Memo. 2011-22

UNITED STATES TAX COURT

ESTATE OF ADELINA CHENG VAN, DECEASED, MICHAEL VAN, TRUSTEE,
Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 5456-04.                    Filed January 27, 2011.

<u>Benjamin Sanchez</u>, for petitioner.

<u>Aaron Stonecash</u> and <u>Catherine Chang</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

HOLMES, <u>Judge</u>:  Adelina Van lived in a house, got title to
the house, and then tried to give the house away when she began
to think about her own death.  She did not actually move out of
the house before she died, and the question before us is whether
the value of the house should be included in her estate.

FINDINGS OF FACT

In 1962, Adelina Cheng Van emigrated to the United States from China as a divorced 41-year-old mother of four.  She eventually settled in San Mateo, California, with three of her children--Norma, Robert, and Michael.  From 1965 to 1973 the Vans lived in a house that they had scraped money together to buy in Foster City.  But then Van started courting a man named Marcel Periat, who in June 1973 bought a house for her on Capistrano Way in San Mateo, very close to his own home.  Periat incurred all the costs himself and kept title to the property in his own name.  Van moved into the Capistrano house and began living there expense free.

Over the years, Van developed an interest in the real-estate business and became an informal agent and manager.  After Van's daughter Norma grew up and married, both she and her husband, James Hu, relied on Van's advice in buying real estate in the San Francisco Bay area.

In 1988, the Hus asked Van to see if Periat would sell the Capistrano house to them.  Periat at first seemed interested in the proposal; but Van then demanded a commission if he sold the house to the Hus.  Periat began to worry that Van was angling to bring a palimony claim and instead negotiated a "Mutual Agreement and Release" with her.  The Agreement required him to sell the Capistrano house to Van for $250,000, with $170,000 as a

downpayment and a secured promissory note to him for the remaining $80,000. Van, however, was not using her own money. The Hus were the source of her funds, both of the downpayment and of the payments on the note.[1] Title passed to Van on August 3, 1989.

But that title didn't rest with her for long. Within hours of recording the deed with San Mateo County, Van recorded a grant deed conveying title to the house to herself and two of her grandchildren--the Hus' daughters Virginia and Arleen, as joint tenants. Without telling her daughter and son-in-law, Van then had Virginia and Arleen reconvey sole title back to her in 1994. Then in August 1997 Van created the Adelina Cheng Van Revocable Trust and deeded the Capistrano house to herself as trustee in December 1997. Two years later, she transferred title to the house from herself as trustee to her daughter Norma and three granddaughters: Virginia, Arleen, and Christina Hu. All of these transfers were gratuitous.

Van died on May 1, 2000. Her son, Michael Van, served as her estate's personal representative and filed the estate tax return. The return disclosed the existence of the Capistrano house but did not list the house as an asset of the estate. The Commissioner sent the estate a notice of deficiency that included

---

[1] The final purchase price of the Capistrano house ended up being $230,000: Periat forgave two $10,000 payments on the $80,000 promissory note in April 1994 and February 1995.

the Capistrano house as a taxable asset of Van's estate.  The estate filed its petition to contest the inclusion.  We tried the case in San Francisco, though Michael Van was a New York resident when he brought the case.

The Commissioner claims that Van retained possession or enjoyment of the Capistrano house until she died, even after title to it began ducking and weaving throughout her extended family.  He argues that this means the value of the house should be part of her taxable estate.

The estate argues that it is really the Hus who owned the house.  They gave the money to Van under what they claim was an agreement that they were to be the legal purchasers of the house even though Van would take title to placate Periat.  The estate argues that the Hus' past dealings with Van, in which she served as their agent for real-estate purchases, support this characterization.

OPINION

I.   Burden of Proof

We begin with the burden of proof.  A taxpayer normally bears that burden.  See Rule 142(a).[2]  However, section 7491(a) shifts the burden to the Commissioner when a taxpayer introduces

---

[2] Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the date of Adelina Van's death, and Rule references are to the Tax Court Rules of Practice and Procedure.

credible evidence regarding the facts of the case, reasonably cooperates with the IRS, and maintains required records. Although it is uncommon for the burden to shift to the Commissioner, the estate has convinced us that it is reasonable to do so in this case. The estate clearly flagged the issue in its return: It listed the Capistrano house and its fair market value on "Schedule A--Real Estate" and then deducted the value, explicitly noting the estate's belief that Van had no ownership interest in the house as the Hus had provided the purchase money and title had passed to Norma Hu and her three daughters before Van's death. The estate also went out of its way to cooperate with the IRS--it allowed the IRS to interview the Hus in its counsel's office; provided the IRS with all the relevant documents before a <u>Branerton</u> conference was held, see <u>Branerton Corp. v. Commissioner</u>, 61 T.C. 691 (1974); and even translated Van's letters into English for the IRS.

II.  Inclusion of the Capistrano House in the Estate

Section 2036[3] includes in a decedent's gross estate the value of all property that a decedent gives away but which she keeps in her possession or in which she continues to enjoy an interest until her death.  The paradigm is a sale with a retained life estate, but the Code states the rule more generally.

A.  California Law

The estate begins by correctly noting that we must look to California law to decide what interests Van held at death: "State law creates legal interests and rights."  Morgan v. Commissioner, 309 U.S. 78, 80 (1940).  If, therefore, California law gave Van a legal or beneficial interest in the Capistrano house at some point during her life, it might be included in her estate under the Code.

The estate also argues that under California law, Van never had an interest in the Capistrano house because the Hus--and here

---

[3] SEC. 2036.  TRANSFERS WITH RETAINED LIFE ESTATE.

    (a) General Rule.--The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death--

        (1) the possession or enjoyment of, or the right to the income from, the property * * *.

we refer to Norma Hu and her husband--themselves were the real owners and Van had taken title only as their agent.  To back up this claim, the estate pointed to other real-estate transactions where Van served as the Hus' agent.  But we find that this deal was different:  Van took legal title to the Capistrano house in her own name and actually lived there.  In all the other deals where Van helped them, the Hus themselves took legal title and rented the houses to unrelated tenants.  They also gave Van a written power of attorney to act on their behalf in managing the properties.  Although we find it was the Hus who gave Van the money she used for the down payment on that house, and then gave her still more to make the payments on the note, this in itself doesn't prove Van was merely their agent.

The Hus' reliance on California law actually undermines the estate's position.  California Evidence Code Section 662 states that "[t]he owner of the legal title to property is presumed to be the owner of the full beneficial title.  This presumption may be rebutted only by clear and convincing proof."  This statute puts a heavy burden on the estate to prove that Van did not own the house.  The Hus did testify that they put the house in Van's name because they were worried that creditors of Mr. Hu's Taiwanese business might someday take it.  The fact, however, that all the Hus' other California properties were titled in their own names reduces our willingness to believe this part of

their testimony.  The Hus have not convinced us that Van was acting merely as their agent in acquiring the Capistrano house. She did not, after all, just hold title in her name--she lived there.  We therefore find that Van did acquire a beneficial interest in the house during her lifetime.

B.  <u>Resulting Trust</u>

As a fallback position, the estate urges us to find a resulting trust.  Its argument is that because the Hus supplied the purchase money, the Hus themselves had a beneficial interest in the house because California law imposes a resulting trust for their benefit against the interest of the titleholder.  This concept of a resulting trust does exist in California law.  As a state court of appeals described the doctrine in <u>Lloyds Bank Cal. v. Wells Fargo Bank</u>, 232 Cal. Rptr. 339 (Cal. Ct. App. 1986):

> A resulting trust arises by operation of law from a transfer of property under circumstances showing that the transferee was not intended to take the beneficial interest[;] * * * [it] arises in favor of the payor of the purchase price of the property where the purchase price, or a part thereof, is paid by one person and the title is taken in the name of another[;] * * * it is the natural presumption in such a case that it was their intention that the ostensible purchaser should acquire and hold the property for the one with whose means it was acquired.

<u>Id.</u> at 1042-43 (quotation marks omitted).

The first problem here is that Van not only "intended to take the beneficial interest" in the Capistrano home, she actually did take a beneficial interest--after all, she was

living there until she died.  And even if the Hus' invocation of the doctrine would otherwise be persuasive, their relationship to Van would undermine it:

> There are, however, exceptions, to this [resulting trust] doctrine.  It is well settled that one exception to the rule is found in transactions between parent and child. * * * These transactions are presumed to be in the nature of gifts, advancements or bounties.  In short, the existence of the relationship of parent and child is a circumstance which *prima facie* establishes the presumption of an advancement and thereby rebuts the presumption of a resulting trust. * * *

Id.

We can't presume an agency here because the parent-child relationship leads us to infer that the Hus' purchase money was a gift to Van that resulted in her taking at least a beneficial interest in the Capistrano house.  And the uniqueness of Van's treatment of the Capistrano house compared to the Hus' other properties, and the implausibility of the Hus' claimed motivation for not putting themselves on the title, lead us to find that neither they nor Van intended merely that she take title to the house on their behalf.  See also Altramano v. Swan, 128 P.2d 353, 356 (Cal. 1942) (transfer between parent and child is gift unless manifest intent otherwise).  Because the estate has not sufficiently rebutted the presumption of a gift, we hold that no resulting trust was created.

C.   <u>Possession or Enjoyment</u>

We do think that Van wanted to leave the house to her daughter's family in some way.  But having found that Van had a beneficial interest in the house, our next task is to see if her divestment of title to the house acted to remove the value from her estate.  Even where a decedent has transferred property before death, the value of such transfers can be included in the estate if she kept some sort of continuing interest in the property.  Sec. 20.2036-1, Estate Tax Regs.  The next question is therefore whether Van retained sufficient "possession or enjoyment" of the Capistrano house until her death so as to require that the house be included in her estate.

We have previously considered what "possession or enjoyment" is.  For example, in <u>Estate of Rapelje v. Commissioner</u>, 73 T.C. 82, 86 (1979), a case involving a similar situation where the decedent transferred his personal residence to his two daughters but continued living there, we held that:

> Possession or enjoyment of gifted property is retained when there is an express or implied understanding to that effect among the parties at the time of transfer. * * * The burden is on the petitioner to disprove the existence of any implied agreement or understanding, and that burden is particularly onerous when intrafamily arrangements are involved. * * *

Because the decedent in <u>Rapelje</u> maintained exclusive occupancy of the residence until his death and did not pay rent, even absent an express agreement we found that possession and enjoyment were

present because all that had happened in the relationship between the parties after the transfer was a change in title.

There is no dispute that Van lived in the Capistrano house from 1973 until her death in 2000; during that time she never paid any rent, either to Periat or to the Hus. We have found on numerous occasions that the type of possession or enjoyment Van had was sufficient to include the value of the residence in the decedent's estate. See, e.g., Estate of Disbrow v. Commissioner, T.C. Memo. 2006-34 (implied agreement for possession of residence where decedent made irregular rent payments for less than amount stated in lease agreement); Estate of Trotter v. Commissioner, T.C. Memo. 2001-250 (continued occupation of condominium after transfer of title to donee and no payment of rent caused inclusion of residence in estate).

The estate's response is that possession of legal title should be the controlling factor. The Hus' daughters shared title with their mother when Van passed away, so they argue the estate (quite possibly divided with Van's other children) should not be forced to include the value of the house in calculating the tax due. We must disagree. As in Commissioner v. Estate of Church, 335 U.S. 632, 644 (1949), the "passage of the mere technical legal title to a trustee is not necessarily crucial in determining whether and when a gift becomes 'complete' for estate tax purposes." Although Van had dispossessed herself of legal

title to the Capistrano property, she continued to live there--a key indicator of the operative "possession or enjoyment" element. To avoid the reach of section 2036, a transfer must be made so that the decedent is "left with no present legal title in the property, no possible reversionary interest in that title, and no right to possess or to enjoy the property then or thereafter." Id. at 645. The facts here compel us to find that the Commissioner correctly included the Capistrano house in Van's estate. We express no opinion on how this might or should affect the ultimate disposition of the house or the remainder of the estate to Van's legatees.

Conclusion

We conclude that Van had a beneficial interest in the Capistrano house and displayed a sufficient degree of "possession or enjoyment" under section 2036, for it to be included in her taxable estate. Therefore,

Decision will be entered

for respondent.