[Civ. No. 710. Fourth Appellate District.—July 13, 1931.]

EMMA J. RHEA, Special Administratrix, etc., Respondent, v. F. D. THOMSON, Administrator, etc., Appellant.

Charles J. Kelly for Appellant.

Newton Van Why for Respondent.

LAMBERSON, J., *pro tem.*—The respondent, who is plaintiff herein, is special administratrix of the estate of Dora Thomson, deceased, who, in 1884, in the state of Illinois, was married to Morton W. Thomson, of whose estate the defendant and appellant is the administrator.

Dora Thomson inherited certain property from her father, from which she realized in 1910 the sum of about $21,060. About the year 1913 she realized by inheritance from the

estate of her mother the sum of about $8,200. All of the proceeds were, in each instance, deposited in a bank to the account and in the name of her husband. Dora Thomson did not, during the years the couple lived in Illinois, have any bank account, and the only testimony in regard to her having an account is to the effect that about 1925, while the couple were residing in California, they planned to have a joint account upon which she could draw checks. The husband and wife had a small dwelling in Illinois, which was their home, and there is testimony to the effect that the husband had a small amount of real property at the time of marriage. He was a carpenter during the greater part of their years of residence in Illinois, and engaged at times in other occupations, but his income was, at all times during their married life, very modest. There is some testimony in the record that he, at one time, sold a piece of property in Illinois for the sum of $3,500, but the circumstances surrounding the sale are not clear. While they were still residents of Illinois, they invested in land in Canada and lived there temporarily. In 1913 the couple moved to California, and in February, 1916, there was purchased and conveyed to Dora Thomson, lot 1 in block 5 of West Adams and Jefferson Street Tract in the city of Los Angeles. Early in 1917 Dora Thomson, by deed, in which her husband joined, conveyed the Jefferson Tract property to Myron W. Smith, and Smith and his wife, in exchange therefor, deeded to the husband of Dora Thomson and to P. W. Thomson, his brother, ten acres of land in Riverside County. Dora Thomson died in March, 1926, and her husband a few months later.

Appellant claims that the title to the Riverside property is in himself as administrator of the estate of Morton W. Thomson. The purpose of the action is to quiet the title of respondent as special administratrix of the estate of Dora Thomson, deceased, to said property.

The trial court found in substance that an undivided one-half interest in the Riverside property was the separate property of Dora Thomson in her lifetime; that it was bought and paid for with property which was the separate property of Dora Thomson, and title was taken by her husband in trust for said Dora Thomson; that the real property described was purchased by Morton W. Thomson, the husband, by exchanging the real property, which stood

in the name of Dora Thomson, and which, at the time, was her separate property, and title thereto was taken in the name of the husband in trust for and for the benefit of said Dora Thomson; that said Dora Thomson relied upon the fidelity of her husband, and believed that he would hold title to the real property in trust for her; that no consideration ever passed from Morton W. Thomson to his wife for said real property, and said Morton W. Thomson had no beneficial interest therein, but the entire consideration therefor was paid by Dora Thomson. Judgment was rendered in favor of respondent as to this particular parcel of land, which judgment decreed that the appellant as administrator, be required to execute a deed conveying title to an undivided one-half· interest to respondent as administratrix. From the judgment this appeal has been taken upon a bill of exceptions and upon the ground that the evidence is insufficient to support any of the findings of the trial court.

■ The evidence is sufficient to support the conclusion of the trial court that the property in the city of Los Angeles was the separate property of Dora Thomson. This conclusion is also supported by the provisions of section 164 of the Civil Code, which specifies that whenever any real property is conveyed to a married woman by an instrument in writing, the presumption is that the title was to be vested in her as her separate property. This presumption was not controverted, and the force of the evidence which it supported was not overcome or met by any evidence offered by appellant. The status of the title to the Los Angeles city property, as determined by the trial court, must therefore be taken to be an established fact in the case. ■ The evidence was also conclusive that the sole consideration for the exchange of the Riverside property was the Los Angeles city property, which had been for a considerable time before the date of the exchange, and was at that time the separate property of Dora Thomson. Section 853 of the Civil Code provides that when a transfer of real property is made to one person, and the consideration therefor is paid by or for another, a trust is presumed to result in favor of the person by or for whom such payment is made.

A similar situation appeared in the case of *Shaw* v. *Bernal,* 163 Cal. 262 [124 Pac. 1012, 1015]. In that case

it was established that a piece of property was purchased in 1897 with funds received by a married woman from her brother. The deed to the property was made to the wife. The husband, who was a machinist, and who attended to all of the business of his wife, including the collection of rentals, sold the property so acquired, and with the proceeds purchased other property, the deed to which was executed to himself and wife as grantees. After her death the husband claimed that the property was community property. The court, in discussing the questions involved, said:

"There was nothing in the evidence to require a conclusion that Mrs. Shaw had ever done more in relation to the money derived from the sale of her lot 6 in block 250 than to intrust it to the custody and control of her husband. As in *Title Ins. Co.* v. *Ingersoll,* 158 Cal. 483 [111 Pac. 364], 'the relation of the parties and their conduct with respect to her money justified the court in preferring the inference that the understanding was that he was to act as trustee for her in the management and disposition of it'. It is well settled that 'if a husband purchase lands with the separate estate of his wife in his hands . . . or money put into his hands to invest for his wife, and take the title in his own name, a trust results to the wife' (1 Perry on Trusts, sec. 127), in the absence of a clear understanding to the contrary, had at the time of the purchase (Id., sec. 140). (See, also, 3 Pomeroy's Equity Jurisprudence, sec. 1049; *Heinrich* v. *Heinrich,* 2 Cal. App. 479, 483 [84 Pac. 326].) It was substantially said in *Title Ins. Co.* v. *Ingersoll,* 153 Cal. 1, 5 [94 Pac. 94], that it is well settled that the mere acquirement of the possession of a wife's separate property by the husband, and his subsequent management and control of the same, all with her consent, do not show any intent on the part of the wife to make a gift of the property to the husband or to change its status from separate to community property, that the presumption in such a case is that the property continues to be the separate property of the wife and that the husband holds it in trust for her, and that under such circumstances it devolves on the trustee claiming a gift or change in the status of the property to show the same."

In the instant case the testimony is plain that over a long period of years the decedents, aside from the possible sale of a piece of property in Illinois for the sum of $3,500, had no considerable amount of property except that which was inherited by the wife; that they were aided to a considerable degree by her father before his death; that the income of the husband was very small; that the wife placed in his hands all of the money received by her, and the same was deposited to the husband's account; that from the Los Angeles city property she received a small monthly rental before its sale, which rental was treated as hers, and of the lack of which she complained after the acquisition of the Riverside property.

In this state all presumptions are in favor of conveyances to the wife. They are presumed to have been made for a consideration paid by the wife, or if it be conceded that the consideration was paid by the husband, it will be presumed that the property was intended as a gift to the wife as her separate property. The burden is upon those claiming under the husband's right to show the contrary. (*Alferitz* v. *Arrivillaga,* 143 Cal. 646 [77 Pac. 657].) Where the presumption is not controverted the court is bound to find in accordance with the presumption. (*Fanning* v. *Green,* 156 Cal. 279 [104 Pac. 308].)

"It is the settled rule that the fact of the receipt by the husband of his wife's money presumptively makes him her debtor and imposes upon him the legal duty of returning it to her, and no affirmative proof is required on the part of the wife to show that the husband received the money as a loan and not as a gift. To the contrary, the burden is upon the husband, or his heirs claiming the money, to show circumstances entitling him, or them, to retain the same. (*White* v. *Warren,* 120 Cal. 322 [49 Pac. 129, 52 Pac. 723]; *Wormley's Estate,* 137 Pa. St. 101 [20 Atl. 621]; *Stickney* v. *Stickney,* 131 U. S. 227 [33 L. Ed. 136, 9 Sup. Ct. Rep. 677, see, also, Rose's U. S. Notes].)" (*McKay* v. *McKay,* 184 Cal. 742 [195 Pac. 385].)"

We are of the opinion that the findings of the court are fully supported by the evidence and that the judgment should be affirmed.

It is so ordered.

Barnard, P. J., and Marks, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on August 10, 1931, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on September 10, 1931.