[Civ. No. 7181.   Third Dist.   June 26, 1946.]

DOROTHY E. FREER, Appellant, v. WELLS FARGO BANK & UNION TRUST CO. (a Corporation) Executor, etc., et al., Respondents.

Libby & Finn, Barrett & McConnell and A. Dal Thomson for Appellant.

Heller, Ehrman, White & McAuliffe, Lawrence C. Baker and L. R. Lambert for Respondent.

PEEK, J.—By this action in quiet title, appellant, the widow of Harry B. Fuller, deceased, seeks to establish as her separate property two parcels of real estate which the respondent executors claim as part of the estate of said deceased. The minor children of appellant and the decedent, as well as the latter's minor adopted son, were brought in as parties defendant appearing through their guardian *ad litem*.

Briefly summarized, the facts are as follows:

Appellant and decedent intermarried in 1933, at which time Mr. Fuller had an adopted son four and one-half years of age. Two children were born of the marriage. The husband was then vice-president and cashier of the Sebastopol National Bank, and in 1939 became president of its successor, the Bank of Sonoma County.

In 1939 decedent purchased an unimproved business lot in the city of Sebastopol, financed the erection of a building thereon, and leased the principal portion thereof to a grocery concern. The remaining portion was leased to a clinic. The deed to the property was taken in the name of decedent's nephew, Paul O'Neil, who resided with the Fullers in their home. O'Neil gave back a note and trust deed to a Santa Rosa bank, which had financed the project with a loan of $12,000. According to appellant's testimony, the reason for

using this method of handling the transaction was that Mr. Fuller did not want the public to know he was involved in the matter, and, being an officer of the bank, he did not want his name to appear in any way in connection therewith. On November 18, 1940, Paul O'Neil, being about to enter the armed forces, deeded the property to appellant, at decedent's request. Mr. Fuller took and retained possession of this deed, placing it in a safe deposit box to which he alone had access. At about the same time, the loan of the Santa Rosa bank was taken over by the Bank of Sonoma County, and the loan account was set up in the name of Harry B. Fuller. The commercial checking account through which all deposits and disbursements relating to the property were cleared originally was captioned "Paul O'Neil North Main Street Property account" and showed the signatures of O'Neil and decedent. After the transfer by O'Neil to appellant, the account was changed by deleting the name of O'Neil and retaining that of decedent. As additional collateral security, Mr. Fuller took out and pledged with the bank a ten thousand dollar insurance policy on his life, naming as beneficiary his estate and not appellant. On April 9, 1942, appellant, at her husband's instance, executed and delivered to him a deed to the store property. This deed also was placed by Mr. Fuller in his safe deposit box. On April 14, 1942, the deed of November 18, 1940, from Paul O'Neil to appellant, was recorded at the request of the Bank of Sonoma County. On December 19, 1942, Mr. Fuller died. Appellant's deed to him, found in his safe deposit box, was recorded at the request of the corporate executor. From the time of the purchase of the store property to the time of his death, Mr. Fuller assumed the entire management and control thereof, never consulting appellant with regard thereto. His bank statements reflected ownership of said property in himself, as did his income tax returns, according to the unchallenged statement of respondents' counsel.

Decedent's will disclosed the creation of a trust in his entire estate, with directions that specified sums be paid monthly to his three children. According to the briefs, there appears to be a question whether at the time of the making of the will the income from the balance of the estate would have been sufficient to meet the maximum requirements of the trust; and it might be inferred that the testator intended the income from the store property to augment the estate.

The other parcel of land involved in this proceeding is a

six-acre tract adjoining a parcel of three acres that friends of the Fullers previously had deeded to the two boys for their use. On January 28, 1942, Mr. Fuller purchased the six acres, having the deed made to appellant as grantee. The acreage was used by the boys and appellant as a place to keep and ride the boys' ponies and her horse. Decedent took and retained possession of this deed also. On February 12, 1942, said deed was recorded at the request of the Bank of Sonoma County. On February 19, 1942, at her husband's instance, appellant executed a deed to him of the six acres. This deed likewise was placed by Mr. Fuller in his safe deposit box. Upon his death said instrument also was recorded at the request of the corporate executor.

With respect to each of the properties, appellant testified to certain declarations alleged to have been made by the deceased which undoubtedly tended to show an intention on his part to make a gift of the same to her, or to create in her mind the impression that such was his intention. Her testimony was that both parcels always were referred to by decedent and herself as her property; that when she executed the deeds to him it was only because of his statements that neither would be recorded, but would be held by him and recorded only if she should predecease him; and that solely because of such statements and the reliance she placed thereon and not otherwise (for as she stated there was no intent to divest herself of title) she executed the deeds and gave them to him to hold.

In addition to the testimony of appellant and the deeds here in issue, the only evidence which appears in the record is the will of decedent, signature cards and bank statements relating to the building account, decedent's financial statements for the years 1940 and 1941, decedent's income tax returns to which counsel made reference but which do not appear in the exhibits forwarded to this court, and testimony of certain officials of the bank and the corporate executor merely for the purposes of identification of the above named documents.

The trial court found against appellant, and in particular that, by causing the deeds to her to be executed, decedent did not intend to make gifts to her or other transfers of ownership, but, on the contrary, intended at all times to retain the ownership and control of said property in himself. The court also found that by her deeds back to her husband appellant

merely intended to and did confirm in him the ownership and control of the properties.

The trial court expressly pointed out in its memorandum opinion: ''No specific issue was tendered or presented and tried with regard to whether the properties constituted the separate property of the decedent or community property of himself and his wife. This issue must not be considered as having been disposed of in this case, but may appropriately be passed upon in the estate proceeding at the time of distribution.'' In its conclusions of law a like statement was made.

■ Appellant, in urging that the evidence does not support the findings, (1) relies on the presumption in favor of a wife under section 164 of the Civil Code, citing cases to the effect that only by clear and convincing proof can such a presumption be overcome, and that, in the absence of evidence to the contrary, the court is bound to find in accordance with the presumption, and (2) contends that, as the deed from appellant was to be recorded and become effective only if she should predecease her husband, the mere delivery of the deed to him, under such circumstances, was ineffectual to transfer title.

However, it is readily apparent from an examination of the record herein in relation to the store property that there is substantial evidence on which the trial court could base a finding contrary to the presumption.

In this connection, the recent decision of the Supreme Court in *Hansen* v. *Bear Film Co., Inc.,* 28 Cal.2d 154, 169-175 [168 P.2d 946], is peculiarly pertinent. In that case a transfer of stock in form absolute from the testator to his mother was held by the trial court to constitute merely a transfer in trust. In affirming the determination of said court, the Supreme Court enunciated and discussed exhaustively, with the citation of appropriate authorities, many of the principles dealing with the questions herein presented. Specifically, under the authority of that decision, it clearly appears that the trial court herein would have been warranted in taking into consideration, as apparently it did, in order to determine whether a gift was intended, the fact of the decedent's retention of control of the property and its income, his written statements, including tax returns, describing the property as a part of his assets, and other factors, such as the reasons which the deceased had for keeping his name out of the trans-

actions, the manner in which he insured his life in order to provide security for the payment of the loan on the property, the method of handling the income account and payments on the loan, his testamentary plan disclosed by the will and trust provisions, and other interwoven circumstances.

But with regard to the six-acre tract an entirely different situation is presented. The record discloses no element of management and control such as existed in the case of the store property. Likewise, the element of income in relation to the trust estate which decedent set up for the benefit of the boys, is entirely lacking. For all that appears the six acres were unimproved in any way, horticulturally or otherwise, although stables had been built on the adjacent three acres. The record is devoid of any written statement by decedent or other documentary evidence tending in any way to show this acreage to be a part of decedent's assets. The original deed was taken in appellant's name, and the property was used solely for the recreation of herself and the two boys. No such reason appears, by inference or otherwise, for keeping decedent's name out of the record title as appears with respect to the store property, with its attendant financial arrangements and loan obligations. In fact, as to the six acres, our examination of the record has disclosed neither evidence nor circumstance to rebut the presumption relied upon by appellant.

It is true that the trial court in considering the testimony of appellant could give to it such credence as the court in its considered judgment deemed proper, even to the point of completely disregarding the same. (*Hansen* v. *Bear Film Co., Inc., supra,* at p. 183.) However, if this has been done here, then, as we have noted, no other evidence of any character appears in the record and all that remains is the presumption to which we have referred.

All presumptions being in favor of conveyances to the wife, therefore, in the absence of any evidence to the contrary, the deed to appellant of said six acres must be taken as evidencing the intention which upon its face it imports, i. e., an outright conveyance to her of the property described therein as her separate property. Respondents having failed to sustain the burden of making a showing to the contrary, said presumption remains uncontroverted and this court is bound, as is the trial court, to find in accordance therewith. (*Rhea* v. *Thomson,* 115 Cal.App. 466, 471 [1 P.2d 1091].)

This being true, it necessarily follows that the finding of the trial court to the effect that the deed covering the six acres from the original grantors to appellant did not transfer title to her is not substantiated by the record. For the same reason, that portion of the subsequent finding of the trial court that the deed from appellant to her husband was to confirm title in him is likewise without support in the evidence.

For the foregoing reasons the judgment is modified with instructions to the trial court to amend its findings in conformance herewith and its judgment in accordance with the views herein expressed.

As so modified, the judgment is affirmed.

Adams, P. J., and Thompson, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 22, 1946.