[S. F. No. 17674. In Bank. Nov. 15, 1949.]

GIACOMO ODONE, Respondent, v. PETER MARZOCCHI, Appellant.

McCarthy & Rowell and Julian D. Pardini for Appellant.

Albert Picard and Alfred E. Graziani for Respondent.

CARTER, J.—Respondent husband brought this action to recover certain real and personal property transferred by his wife shortly before her death to appellant.

Respondent, Giacomo Odone, and the decedent, Maria Odone, were married in France in 1928, and came to San Francisco

where they lived until Maria's death in January, 1946. The record does not show that either of the parties had any separate property at the time of the marriage or that either of them acquired any during the marriage except as hereinafter set forth.

In July, 1944, Maria purchased for $1,300 a piece of improved real estate in San Francisco, taking title, as recited in the deed, as her separate property. Eleven days thereafter, her husband, the respondent, executed a quitclaim deed of this property to her. Both deeds were recorded on August 2, 1944. It appears that this property was purchased with the combined earnings of Maria and Giacomo Odone.

Appellant, Peter Marzocchi, had known Odone before his marriage to Maria, and after the marriage was a friend to both husband and wife, and was, at times, the employer of Odone. Maria, who had evidently come to dislike and distrust her husband, placed more and more confidence in Marzocchi and consulted with him about buying the property in question. It seems that Marzocchi assisted the couple in various matters since both Maria and her husband spoke Italian and had difficulty with the English language. Marzocchi testified that he went with Maria to the title company to help her complete her plans to purchase the real property. After her purchase of the house and lot, Marzocchi did a great deal of work in repairing it and in building an additional room thereon. He testified that he had expended $1,500 of his own funds on the house, and that his labor was worth $500.

In November of 1945, Maria became seriously ill and it was necessary for her to be hospitalized, and Marzocchi made all the necessary arrangements for her care. Several times before she became ill, Maria and Marzocchi had discussed different ways in which she could repay him for his labor and the money he had expended. (There is a deed in evidence, dated August 6, 1945, signed by Maria, granting to Marzocchi an undivided one-half interest in the property, but the evidence does not show that this deed was ever delivered to him.) On November 26, 1945, before she became hospitalized, but after the onset of her illness, Maria executed a deed to Marzocchi granting him the property in question for a recited consideration of $1,800. This deed was recorded December 15, 1945. On the same day, appellant signed and acknowledged a deed reconveying the property to her with the understanding that the deed would be delivered to their attorney and delivered by him to Maria if appellant should predecease her. This deed

was never delivered to either the attorney or Maria, nor was it recorded.

With respect to the real property, the trial court found that respondent was the owner and entitled to possession; that Maria had no title or interest and no power to convey any interest therein; that the property was owned by respondent *and* Maria Odone; that the deed from Maria to appellant was void and must be canceled and appellant required to execute, acknowledge and deliver to respondent a deed conveying all right, title and interest in the property. These findings are inconsistent in themselves in that the court finds the property to be owned by respondent and Maria, and yet finds that Maria had no title or interest or power to execute any conveyance. The finding that respondent was the owner, or that he owned the property with Maria, his deceased wife, is not supported by the record.

The deed to Maria recites that the property is conveyed to her as her separate estate. Section 164 of the Civil Code provides that whenever any property is acquired by a married woman by an instrument in writing, it is presumed to be her separate property. Although this is a rebuttable presumption, respondent made no effort to explain his quitclaim deed of July 14, 1944. All presumptions being in favor of conveyances to the wife, therefore, in the absence of any evidence to the contrary, the quitclaim deed to decedent must be taken as evidencing the intention which it imports—a conveyance of any interest which respondent had in the property to her as her separate estate, and the court is bound to find in accordance with the presumption. (*Freer* v. *Wells Fargo Bank etc. Co.*, 75 Cal.App.2d 150 [170 P.2d 491]; *Rhea* v. *Thomson*, 115 Cal.App. 466 [1 P.2d 1091]; *Dale* v. *Dale*, 87 Cal.App. 359 [262 P. 339].)

Although the property was undoubtedly purchased with the community funds of the parties, a husband and wife may agree between themselves that the status of such property may be changed so as to become the separate property of either of them, or the husband may make a gift of his share of the community to his wife. It would appear that the quitclaim deed executed by respondent and otherwise unexplained by him, would show a sufficient intent on his part that the property was to be the separate estate of his wife. There is no other evidence bearing on the question, and under these circumstances, it would seem conclusively established that dece-

dent owned the real property as her separate estate which she could, of course, convey to a third person without the consent of her husband, the respondent. (Civ. Code, § 162.)

Respondent contends that it is immaterial whether the character of the property is considered to be community or the separate estate of the deceased wife inasmuch as it was conveyed by decedent to appellant merely for security purposes—to insure the payment of appellant's services in repairing the house, and the repayment of the money expended by him. Appellant testified that his labor, and the money expended by him, amounted to about $2,000. He testified that Mrs. Odone asked him to have the deed prepared and insisted upon the insertion therein of the statement as to the consideration of $1,800. His testimony as to the reasons for her insistence is confusing. He said that she wanted to "give" him the property because he had put a great deal of time and money into it; that she wanted him to be protected in the event that she died; that she "just wanted to do it that way." He also testified that in November, 1945, when Mrs. Odone became ill, she wanted to sell him the property and that "the last understanding was that she decided to sell me the house because she found out I had done so much work in the house that it was worth it; she sold me the house for all what I done." It would seem reasonable to conclude from this that Mrs. Odone either intended to give him the property because he had expended so much in repairing it, or that she intended to sell it to him for his past services which she valued at $1,800. Either conclusion is consistent with her intent, as evidenced by her deed, to pass title to appellant. Neither consideration, nor adequacy of consideration, is essential to the validity of a deed. (Civ. Code, § 1040; *Abelein* v. *Pepper,* 8 Cal.2d 25 [63 P.2d 817]; *Graner* v. *Hogsett,* 84 Cal.App.2d 657 [191 P.2d 497]; *Cambridge Co.* v. *Moore,* 62 Cal.App.2d 134 [144 P.2d 57].) The deed was delivered to and accepted by appellant, and it follows that if she intended to give him the property, her deed would pass title; or, if she intended to sell it to him for his past services, this also would be a sufficient consideration (if any were needed) to pass title to appellant. (*Bradley* v. *Butchart,* 217 Cal. 731 [20 P.2d 693]; *Davies* v. *Symmes,* 49 Cal.App.2d 433 [122 P.2d 102]; *Chichester* v. *Mason,* 43 Cal.App.2d 577 [111 P.2d 362].)

The facts with respect to the personal property are as follows: Just before going to the hospital on December 16, 1945, Maria handed appellant a package of currency which she

told him amounted to $5,400. He testified that she told him that she wanted him to use it to pay her bills and to do all that he could for her, and if she did not die, he was to return the balance to her, but if she should die, he was to keep it for himself. Twelve days later, while in the hospital, Maria signed an instrument, written both in English and Italian, which reads as follows: "December, 28, 1945, I, Mary Odone, declare that I have made a gift, in case of my death, to my friend, Peter Marzocchi, of Fifty Four Hundred Dollars ($5400.00) in cash which I want him to have for his own in case I should die. If I recover my health, he will return it to me. Maria Odone." Maria died eight days after signing this instrument.

The Civil Code (§ 1149) provides that a gift in view of death is one which is made in contemplation, fear, or peril of death, and with intent that it shall take effect only in case of the death of the giver. Section 1150 (Civ. Code) provides that "[a] gift made during the last illness of the giver, or under circumstances which would naturally impress him with an expectation of speedy death, is presumed to be a gift in view of death." The essential elements of such a gift are present here. The gift was made with a view to the donor's death; the donor died of the illness which she feared; there was an actual delivery to the donee, and acceptance by him, all of which transpired within the life of the donor. (*Braun* v. *Brown*, 14 Cal.2d 346 [94 P.2d 348, 127 A.L.R. 773]; *Yates* v. *Dundas*, 80 Cal.App.2d 468 [182 P.2d 305]; *Barham* v. *Khoury*, 78 Cal.App.2d 204 [177 P.2d 579].) In the last cited case, the court said that the execution of a writing does not enhance the validity of a gift *causa mortis*. Its only advantage is to contribute to certainty in the proofs. Such language merely repeats the legal implication and emphasizes that a gift *causa mortis* was intended. (See cases cited there.)

The funds handed to appellant by Maria were admittedly derived from the earnings of both husband and wife and therefore constitute community property since there is no evidence that the husband made a gift of any part of them to the deceased wife.

The trial court found that appellant was indebted to respondent in the sum of $5,400, but that appellant was entitled to credit for the sum of $1,800 to cover various expenditures made by him "in and about the funeral and burial of Maria Odone, the deceased wife of said plaintiff, and in and about certain real property owned by said plaintiff and

438

said Maria Odone . . ." The amount found by the trial court to be due as a credit to appellant cannot be sustained under any view of the evidence. Appellant contends that the trial court erred in finding that he received $5,400 from Maria and contends that he received but $5,000; that the money received by him constituted her separate property and that he should be entitled to the whole thereof, minus certain expenses, as a gift *causa mortis,* or to one-half thereof if the money constituted community funds of the deceased and respondent. If the money constituted community funds, appellant contends that the expenses of the last illness and funeral should be charged against the half to which decedent had no testamentary power.

The evidence is sufficient to support the finding of the trial court as to the amount of money which appellant received from Maria, as there was received in evidence on behalf of appellant a written instrument signed by Maria in which she declared that she had made a gift to appellant of the sum of $5,400. Appellant's contention that the funds were the separate property of Maria cannot be sustained since the funds were admittedly derived from the earnings of both husband and wife during marriage and therefore constituted community property. (Civ. Code, §§ 162, 163, 164.)

Appellant's contention that the delivery to him of the $5,400 was a gift *causa mortis* is meritorious since the essential elements of such a gift were present. Respondent, on the other hand, maintains that section 172 of the Civil Code renders the wife's gift invalid because it is there specifically provided that the husband has the management and control of community personal property, with like absolute power of disposition, other than testamentary, that he has of his separate estate.

Section 201 of the Probate Code provides that "Upon the death of either husband or wife, one-half of the community property belongs to the surviving spouse; the other half is subject to the testamentary disposition of the decedent, and in the absence thereof goes to the surviving spouse, subject to the provisions of sections 202 and 203 of this code."

It has been settled in this state that a gift made *inter vivos* by the husband to a third person of community property without the wife's consent is valid as to one-half thereof at his death, although the wife, during her husband's lifetime may set it aside *in toto;* (*Britton* v. *Hammell,* 4 Cal.2d 690 [52 P.2d 221]; *Ballinger* v. *Ballinger,* 9 Cal.2d 330 [70 P.2d

629]; *Lynn* v. *Herman,* 72 Cal.App.2d 614 [165 P.2d 54]),
and that the husband may make a gift to a third person to
take effect upon his death of one-half of the community funds.
(*Pacific Mut. Life Ins. Co.* v. *Cleverdon,* 16 Cal.2d 788 [108
P.2d 405]; *Travelers Ins. Co.* v. *Fancher,* 219 Cal. 351 [26
P.2d 482]; *Estate of McNutt,* 36 Cal.App.2d 542 [98 P.2d
253]; *Mazman* v. *Brown,* 12 Cal.App.2d 272 [55 P.2d 539].)

 The respective interests of the husband and wife in
community property during the continuance of the marriage
relation are declared by the Civil Code (§ 161a) to be present,
existing and equal interests, although the management and
control of the community is entrusted to the husband. It
would seem to follow that by virtue of this provision, and
that of the Probate Code (§ 201) providing for testamentary
disposition by either spouse of one-half of the community
funds, that the wife also may make a gift of her share to take
effect upon her death. Such a gift may be regarded as the
equivalent of a provision by will, for it is, in its nature, testa-
mentary. (*Mutual Benefit Life Ins. Co.* v. *Clark,* 81 Cal.App.
546 [254 P. 306]; *Britton* v. *Hammel,* 4 Cal.2d 690 [52 P.2d
221]; IV Page on Wills (Lifetime ed.) 744.) It would appear
to follow therefore that, in such a case, the wife would be
entitled to make a gift *causa mortis* of one-half of the com-
munity funds without the husband's consent. Such a gift,
by analogy to one made by the husband, would be voidable
by him as to the whole thereof during her lifetime, but upon
her death may be avoided by him as to one-half only.

The remaining question to be decided with respect to the
personal property is the source of payment of the expenses
of the deceased wife's last illness and funeral. The undis-
puted evidence shows these expenses to be $1,574.17.

 Section 202 of the Probate Code provides in part
that "Community property passing from the control of the
husband, either by reason of his death *or by virtue of testa-
mentary disposition by the wife,* is subject to his debts and to
administration and disposal under the provisions of Division
III of this code; . . ." The husband is liable for the neces-
saries of life furnished to the wife while the parties are living
together. (Civ. Code, § 174.) Medical expenses incurred dur-
ing the last illness, and the funeral expenses, are such neces-
saries. (*Estate of Weringer,* 100 Cal. 345 [34 P. 825]; *Evans*
v. *Noonan,* 20 Cal.App. 288 [128 P. 794]; *Riley* v. *Robbins,*
1 Cal.2d 285 [34 P.2d 715]; *Medros* v. *Kohn,* 68 Cal.App. 367

[229 P. 873] ; *Davis* v. *Fyfe*, 107 Cal.App. 281 [290 P. 468].)

If these expenses are a debt of the husband, and the community property is liable for his debts (*Nichols* v. *Mitchell*, 32 Cal.2d 598, 610 [197 P.2d 550] ; *Grolemund* v. *Cafferata*, 17 Cal.2d 679 [111 P.2d 641]), it would seem that, under the Probate Code, section 202, the expenses should be paid from the sum of $5,400, and the net balance divided equally between appellant and respondent. In *Estate of Coffee*, 19 Cal.2d 248, 252 [120 P.2d 661], this court, in construing section 202, Probate Code, said that ". . . the portion of the community which belongs to the wife is the one-half which remains after the payment of the husband's debts and the expenses of administration . . ." (See *Estate of Atwell*, 85 Cal.App.2d 454 [193 P.2d 519] ; *Estate of Marinos*, 39 Cal.App.2d 1 [102 P.2d 443].) In the Coffee case, the husband predeceased the wife so the reverse situation is presented. This would, however, seem to make no difference in the result to be reached. The community property, in the amount of $5,400 received by appellant, being liable for the husband's debts, should be charged with the expenses here involved. In this connection, it must be noted that appellant has paid, from the funds received by him, all expenses of Mrs. Odone's last illness and funeral, and must be credited with one-half thereof when he receives his share of the balance, or, in other words, the amount of these expenses must be deducted from the $5,400, and the balance divided equally between appellant and respondent.

Appellant, Peter Marzocchi, in his cross-complaint, alleged that the reasonable rental value of the real property was $20 per month and prayed for that amount from the time of the death of Maria until possession should be delivered to him. *This cross-complaint was not answered by respondent,* Giacomo Odone, and must therefore be taken as true. The trial court found "That none of the allegations contained in the first amendment to answer and cross-complaint or in the cross-complaint on file herein is true." This finding is in conflict with section 442 of the Code of Civil Procedure which provides, in part, as follows: ". . . The cross-complaint must be served upon the parties affected thereby, and such parties may demur or answer thereto *as to the original complaint* . . ." Section 462 of the Code of Civil Procedure provides that "Every material allegation of the complaint, not controverted by the answer, must, for the purposes of the action, be taken as true; . . ." The parties affected by a cross-complaint may demur or answer thereto as to the original complaint. If they

do not plead thereto, they admit the facts alleged. (21 Cal. Jur. § 56, p. 88, and cases there cited.)

The judgment is reversed.

Gibson, C. J., Shenk, J., Edmonds, J., Traynor, J., Schauer, J., and Spence, J., concurred.

Respondent's petition for a rehearing was denied December 15, 1949, and the following opinion was then rendered:

THE COURT.—Respondent has petitioned for a rehearing contending that the opinion of this court erroneously states that the cross-complaint was not answered by respondent and must, therefore, be taken as true, and that this court erred in holding that a wife may make a valid gift *causa mortis* of one-half of the community property. Respondent concedes that the record before this court fails to disclose any denial of the allegations of the cross-complaint, but he asserts that appellant stipulated in the trial court that these allegations should be deemed denied, but that this stipulation was not made a part of the record on appeal. Since the statement in the opinion is in accord with the record on appeal before this court, and the judgment of reversal rendered by this court is general, setting the case at large in the trial court, if the case is to be retried the pleadings may be recast in such manner as to tender any issues which were available to the parties at the former trial.

There is no merit in the petition for rehearing and the same is, therefore, denied.