[L. A. No. 23569. In Bank. June 28, 1956.]

ALLAN LEE WOODS, Appellant, v. SECURITY-FIRST NATIONAL BANK OF LOS ANGELES (a Corporation), as Executor, etc., et al., Respondents.

Guerin & Guerin and John J. Guerin for Appellant.

Benjamin S. Crow and Rex W. Kramer for Respondents.

CARTER, J.—Plaintiff appeals from a judgment in an action in which he sought to obtain property which stood in his deceased wife's, Eugenie's, name at the time of her death.

From the findings of the court it appears that defendant bank is the executor of Eugenie's will, she having died on May 28, 1949, at the age of 91. Plaintiff and decedent were married on January 14, 1949. (The other defendants are beneficiaries under the will.) At the time of the marriage decedent owned considerable real and personal property and she "orally agreed with him [plaintiff] that if they were married, all of her property would become community property and would become his property at her death.

"After the marriage of plaintiff and said decedent, she orally declared to plaintiff and to others that by reason of said marriage the property had become the community property of herself and plaintiff and would become his after her death, to which statement plaintiff assented; and said decedent intended by such declarations to transmute her separate property to community property. At the time of the marriage of plaintiff and said decedent, and thereafter, plaintiff was possessed of no property, except items of personal use and adornment. . . . After the said marriage plaintiff earned no money and contributed nothing in the way of property, money, or otherwise, to the community. After the marriage, said deceased did nothing in the way of the transmutation of her separate property, except to make the oral declarations hereinbefore stated; she did not part with the control of any of said property or put the possession of any of it in plaintiff;

she retained her bank account in her own name, subject only to her right of withdrawal; she retained her safe deposit box in her own name, subject only to her right of access; she continued to live in the same residence where she had lived prior to her marriage and where, prior to her marriage plaintiff had lived as her employee and continued to live as her husband. The oral declarations of decedent, made after her marriage, that her property was community property, as well as any oral declaration or agreement she may have made prior thereto, was never followed by any action on the part of her or the plaintiff to transfer title, control or possession.''

As conclusions of law the court declared that plaintiff had no interest in any of decedent's property except a homestead set aside in the probate proceedings for a period of five years; that all the property was her separate property and she had not conveyed any of it to plaintiff; that the ''oral agreements and declarations between the parties hereinbefore found were not executed or consummated'' and such agreements and declarations were barred by section 1624, subdivisions 3 and 6 of the Civil Code,[1] and section 1973, subdivisions 3 and 6 of the Code of Civil Procedure,[2] and section 1091 of the Civil Code.[3] Judgment for defendants followed accordingly.

Decedent left a will executed before her marriage to plaintiff in which she left some property to plaintiff, her servant; that bequest was cancelled by a later codicil. Whether she successfully disinherited plaintiff, her after acquired spouse (see Prob. Code, § 70; *Estate of Poisl,* 44 Cal.2d 147 [280 P.2d 908]), is not before us.

Plaintiff contends that the judgment is not supported by the findings above quoted because thereunder there was an executed oral agreement transmuting decedent's separate property to community property; that an order of the court

---

[1] ''The following contracts are invalid, unless the same, or some note or memorandum thereof, is in writing and subscribed by the party to be charged or by his agent: . . .

''3. An agreement made upon consideration of marriage other than a mutual promise to marry; . . .

''6. . . . an agreement to devise or bequeath any property, or to make any provision for any persons by will. . . .'' (Civ. Code, § 1624, subds. 3, 6.)

[2] The Code of Civil Procedure provision corresponds with section 1624, subd. 3, and subd. 6 of the Civil Code, *supra.*

[3] ''An estate in real property, other than an estate at will or for a term not exceeding one year, can be transferred only by operation of law, or by an instrument in writing, subscribed by the party disposing of the same, or by his agent thereunto authorized by writing.'' (Civ. Code, § 1091.)

on his petition to determine heirship in the probate proceedings in decedent's estate is res judicata that the property was community.

It is settled that the separate property of husband or wife may be converted into community property or *vice versa* at any time by oral agreement between the spouses. (*Tomaier* v. *Tomaier*, 23 Cal.2d 754 [146 P.2d 905] ; *Gudelj* v. *Gudelj*, 41 Cal.2d 202 [259 P.2d 656] ; *Estate of Wieling*, 37 Cal.2d 106 [230 P.2d 808] ; *Socol* v. *King*, 36 Cal.2d 342 [223 P.2d 627] ; *LaMar* v. *LaMar*, 30 Cal.2d 898 [186 P.2d 678] ; *Odone* v. *Marzocchi*, 34 Cal.2d 431 [211 P.2d 297, 212 P.2d 233, 17 A.L.R.2d 1109] ; 10 Cal.Jur.2d, Community Property, § 58.) And it has been held that an oral antenuptial agreement is effective if it is executed subsequent to the marriage as disclosed by acts and conduct in confirmation of it. (*Kenney* v. *Kenney*, 220 Cal. 134 [30 P.2d 398] ; *Handley* v. *Handley*, 113 Cal.App.2d 280 [248 P.2d 59] ; *Estate of Piatt*, 81 Cal.App.2d 348 [183 P.2d 919].)

Defendants contend, however, that there was no agreement that the property was to be community; that if there was such an agreement neither it nor the prenuptial agreement was consummated, pointing out that it has been held that marriage is not such an execution of an oral marriage settlement contract as will take it out of the statute of frauds. (See *Hughes* v. *Hughes*, 49 Cal.App. 206 [193 P. 144] ; 13 Cal.Jur. 811-812.)

The findings of the court above quoted clearly show an oral agreement before marriage that decedent's property was to be community property. After the marriage it was agreed that her property "had become" community property. This follows from the finding that decedent declared to *plaintiff* and others that the property *had become* community property, to which declaration plaintiff assented; that by such declaration, to which plaintiff assented, decedent intended to transmute her separate property to community property. This is a clear case of an executed agreement which transmuted the property. The court went on to find that no action was taken by decedent or plaintiff to transfer title, control or possession and the property continued to be treated as before, thus indicating it thought the law to be that some action in addition to the agreement was necessary before the agreement was executed, but as later discussed that was not necessary.

■ An agreement such as we have here has as consideration, if any is needed, the mutual consent of the spouses. (See *Pacific Mut. Life Ins. Co.* v. *Cleverdon*, 16 Cal.2d 788 [108 P.2d 405], and cases there cited; see *Title Ins. & Trust Co.* v. *Ingersoll*, 153 Cal. 1 [94 P. 94].) ■ In *Estate of Raphael*, 91 Cal.App.2d 931, 939 [206 P.2d 391], it is said: "The object of the oral agreement of transmutation was fully performed when the agreement was made for it immediately transmuted and converted the separate property of each spouse into community property, and nothing further remained to be done." In that case, other than evidence of the oral agreement that separate property of one spouse was to be community property, nothing was shown except the making of income tax returns treating the property as community. No transfers or instruments of conveyance were executed and no delivery of possession of property made. The tax returns were not essentially different in effect than decedent's declaration in the instant case that the property was community. In most of the other cases dealing with oral transmutation agreements there was evidence of various things such as the use of the property by the spouses as though it were of the character to which it was transmuted by agreement, commingling of property and similar factors, but the language stating the rule in the cases is broad. Those other things are only evidence which may sustain or refute the existence of an agreement for transmutation or its execution; none of the cases hold that they are indispensable. Recognizing the practice of informality in property dealings between husband and wife it appears there was nothing more to be done in this case. The transmutation had taken place; it was a *fait accompli*. It is not surprising under the facts in the instant case that nothing more was done since the parties were married only about four months before decedent's death. If other things are indispensable as argued by defendants, then in cases of the death of a spouse shortly after the agreement, the rule would generally not apply because of the physical improbability of the time to do those things. We know of no such limitation on the rule.

■ Plaintiff claims more than one-half of the community property notwithstanding decedent's half was given to others by the will. He asserts that the agreement between decedent and him created a community property life estate in the property with a present vested remainder interest in the whole in him; the vested remainder portion of the agreement

was executed as well as the life community interest; that therefore there was no property interest in decedent at the time of her death upon which her will could operate. There would appear to be no obstacle to that position for if a remainder was intended it would be created at the same time as the life estate. However, it is not clear from the court's findings as to the agreement heretofore quoted whether a community life estate and vested remainder were created or that plaintiff and decedent were to hold the property as community in fee simple and decedent would either not will away her half of it or would will it to plaintiff. If it is the latter, plaintiff is confronted with subdivision 6 of Civil Code section 1624, quoted *supra,* and that portion of the agreement was not executed because decedent did leave a will and did not leave the property to plaintiff. If the findings are subject to the latter construction, the judgment cannot be affirmed on the theory that the findings must be construed to support the judgment, because the court found that plaintiff obtained no interest in the property by the agreement and it is not found whether that portion of the agreement making the property community is separable from the portion agreeing to not will it to anyone else except plaintiff.

The foregoing furnishes sufficient ground for reversal, but there is an additional reason why a reversal should be ordered with directions, because of the defendant's plea of res judicata.

The record shows that on May 17th the plaintiff filed in the matter of the estate of his deceased wife a petition to determine heirship in which he alleged that the decedent left a will executed on April 18, 1945 (which provided therein for the plaintiff); that she made a codicil thereto dated June 20, 1945 (by which the decedent excluded the plaintiff from the will as a beneficiary); that the plaintiff and the decedent were married on January 15, 1949; that by reason of the marriage the decedent died intestate as to the plaintiff (see Prob. Code, § 70; *Estate of Poisl,* 44 Cal.2d 147 [280 P.2d 789]), and that he was the heir of the decedent as her surviving spouse (see Prob. Code, §§ 221, 223, 224). The petition to determine heirship prayed that the court declare the rights of the parties and "determine to whom distribution of said estate should be made."

By his petition the plaintiff as an heir of the decedent properly invoked the jurisdiction of the court in probate under section 1080 of the Probate Code. The court determined

that the plaintiff was entitled to one-half of the property. That decision became final long before the commencement of the present action. Whatever reasoning prompted the court in arriving at its conclusion that the plaintiff was entitled to one-half is not now important. The court had the right to decide the question at issue, as the plaintiff in asserting that he was an heir was thereby claiming through the estate and not adversely to it. (*Central Bank* v. *Superior Court,* 45 Cal.2d 10, 16-17 [285 P.2d 906].) It mattered not whether the court sitting in probate found the property to be community or separate. It had the power to decide the question of heirship presented in the petition and the determination therein is res judicata. The fact that the petition also sought to have the entire estate declared to be community property did not oust the court sitting in probate of jurisdiction to determine the question of heirship. Anything in the *Estate of Kurt,* 83 Cal.App.2d 681 [189 P.2d 528], inconsistent with the conclusion herein is disapproved. Because of what has been said a retrial of the cause becomes unnecessary.

The judgment is reversed and the trial court is directed to enter judgment awarding the plaintiff one-half of the property of the decedent and such other relief as may flow from his ownership and right to possession thereof.

Gibson, C. J., and Shenk, J., concurred.

McCOMB, J.—I concur in the judgment on the sole ground that the question presented is res judicata.

Schauer, J., concurred.

The petition of respondent Security-First National Bank for a rehearing was denied July 24, 1956. Spence, J., did not participate therein. Schauer, J., was of the opinion that the petition should be granted.