A. BRUNO DISPOTO AND PATSY DISPOTO, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent; MARY JO DISPOTO, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Dispoto v. Commissioner
Docket Nos. 4933-88, 5098-88
United States Tax Court
T.C. Memo 1990-394; 1990 Tax Ct. Memo LEXIS 411; 60 T.C.M. (CCH) 284; T.C.M. (RIA) 90394; July 30, 1990, Filed *411 Decision in docket number 4933-88 will be entered for the petitioner. Decision in docket number 5098-88 will be entered under Rule 155. Claude P. Kimball, David J. Fillerup, and Kenneth M. Byrum, for A. Bruno and Patsy Dispoto. Michael P. Mears, for Mary Jo Dispoto. Robert J. Misey, Jr., for the respondent. WRIGHT, Judge. WRIGHT
MEMORANDUM FINDINGS OF FACT AND OPINION In these consolidated cases, respondent determined the following deficiencies in petitioners' Federal income tax: Taxable
Petitioners
Docket No.
Year
Deficiency
A. Bruno and Patsy Dispoto
4933-88
1979
$ 216,047
Mary Jo Dispoto
5998-88
1979
158,886
1980
136
After concessions by respondent, the remaining issues for decision in these consolidated cases are: (1) whether business expense deductions claimed by Mary Jo Dispoto are disallowed pursuant to section 268[1] because they are attributable to the sale of an unharvested grape crop which is considered, pursuant to section 1231(b)(4), as "property used in the trade or business"; and (2) if such business expenses are not disallowed pursuant to section 268, and thus are deductible by Mary Jo Dispoto, whether A. Bruno Dispoto, her former spouse, is entitled to deduct claimed business *412 expenses attributable to the acquisition, through a divorce settlement, of such crop. FINDINGS OF FACT
Some of the facts have been stipulated. The stipulation of facts, supplemental stipulations of fact, and accompanying exhibits are incorporated herein. A. Bruno and Patsy Dispoto resided in Bakersfield, California, when they filed their petition. Mary Jo Dispoto resided in Delano, California, when she filed her petition. A. Bruno and Mary Jo Dispoto, who married in 1951, were granted a divorce by the Kern County Superior Court (hereinafter referred to as the "county court") on August 11, 1978. Mary Jo Dispoto and A. Bruno Dispoto will hereinafter be referred to as "petitioner" and "Bruno." During the course of their marriage petitioner and Bruno established several unincorporated businesses (hereinafter referred to collectively as "the business properties"). The business properties consisted of: (1) two vineyards; (2) a brokerage business through which they brokered their own grapes, as well *413 as grapes grown by others; (3) a cold storage business through which they cooled and stored their own grapes, as well as grapes grown by others; and (4) a land rental business through which they leased portions of a vineyard. The business properties were held by petitioner and Bruno as community property. The business properties were managed entirely by Bruno. Pursuant to the divorce granted on August 11, 1978, the county court reserved jurisdiction over the disposition of all community property. By judgment dated May 10, 1979, the county court ordered a division of all nonbusiness community assets and liabilities. In order to equalize the division, the judgment provided that Bruno was to receive, from the assets of the business properties, cash in the sum of $ 59,100. The judgment also ordered that the business properties be listed for sale to third parties, subject to a right of first refusal by Bruno. The judgment further ordered that until the remaining properties were sold, petitioner and Bruno were each entitled to a monthly allowance of $ 1,100 from the business properties, which Bruno was to continue to manage. In addition to listing the business properties for sale with *414 a broker, petitioner and Bruno considered, and rejected, operating the properties as a partnership or a corporation. On August 6, 1979, petitioner requested a written offer from Bruno, pursuant to a direction from the county court, to "buy out" petitioner's interest in the business properties. On August 10, 1979, Bruno offered to purchase petitioner's interest in the business properties for $ 778,000 in cash, the assumption by Bruno of her share of all business liabilities, and the application of the $ 59,100 due to Bruno under the May 10, 1979 judgment to the purchase price. The offer was contingent on the 1979 grape crop producing $ 600,000 net profit. Petitioner rejected the offer on August 15, 1979. A settlement conference before the county court to determine disposition of the business properties was scheduled for September 7, 1979. Bruno formalized his August 10, 1979 proposal, with some modifications, by filing it with the county court on August 30, 1979. In addition, on September 4, 1979, Bruno filed an alternate proposal providing that the business properties and liabilities were to be divided equally between Bruno and petitioner. At the September 7, 1979 settlement conference, *415 petitioner rejected Bruno's alternate proposal to divide the community property. Petitioner then offered to transfer her interest in the business properties to Bruno for $ 1,150,000, payable in cash, and assumption by Bruno of petitioner's share of all of the remaining liabilities. Petitioner's offer specifically provided that her interest in the unharvested grape crop was to pass to Bruno as part of the transfer. The gross value of the grape crop was estimated to be between $ 840,000 and $ 900,000. The offer was not contingent on producing the estimated gross value. The offer required an escrow which was to close before December 15, 1979. Bruno made a counter offer of $ 1,000,000 as the cash portion of the purchase price for petitioner's share of the assets, which was accepted by petitioner. The parties agreed that Bruno would assume petitioner's share of the business liabilities and that the $ 59,100 debt to Bruno under the May 10, 1979, judgment would be extinguished. The $ 1,000,000 payment was initially agreed to be made in cash. However, petitioner later proposed, and Bruno agreed, that the $ 1,000,000 be paid as follows: (1) $ 100,000 in 1979; (2) $ 150,000 in 1980; and *416 (3) the balance of $ 750,000 to be represented by a promissory note to be payable in 10 equal annual installments commencing in 1981, bearing interest at the rate of 10 percent per annum. Bruno also agreed to give petitioner a security interest in the business real property. Petitioner's attorney prepared a written judgment reflecting the agreement reached on September 7, 1979, which was signed by the county court on October 16, 1979. Through the judgment, the county court ordered petitioner and Bruno to execute all documents necessary to carry into effect the agreement of the parties and the order of the county court made pursuant thereto. The judgment refers to the transfer as a "purchase and sale" over which the county court reserved jurisdiction until February 28, 1980, or until such time as all the requirements of the "sale" were effectuated, whichever occurred later. The judgment also provided that petitioner was to continue to receive an allowance of $ 1,100 per month until the first payment of $ 100,000 was made by Bruno. However, the judgment provided that Bruno was to be reimbursed for any payments made after September 7, 1979. The judgment provided further that fees *417 for the services of attorneys, appraisers, accountants, and brokers of both parties through September 7, 1979, would be borne equally by petitioner and Bruno. On February 7, 1980, petitioner executed and deposited into escrow a grant deed transferring title to her interest in the business real properties to Bruno. The deed was recorded on March 12, 1980. On February 7, 1980, Bruno executed and deposited into escrow a promissory note payable to petitioner in the amount of $ 750,000, as well as a trust deed for the benefit of petitioner, securing said promissory note. After September 7, 1979, Bruno made all payments on the promissory notes secured by the business properties, paid all real property taxes attributable to the business properties, and made all insurance payments for the business properties. Petitioner did not offer to pay any of the business expenses, nor did she request an accounting of income. In the course of preparing Bruno's Federal income tax return for taxable year 1979, Bruno's accountant prepared a draft Schedule F (Farm Income and Expenses) showing the income and expenses of the business properties for the period from January 1, 1979 through September 7, 1979. *418 In preparing the draft Schedule F, Bruno's accountant did not allocate expenses between the grape growing business and the other businesses. The draft Schedule F was forwarded to petitioner's accountant, who relied on it in preparing petitioner's 1979 Federal income tax return. On that return petitioner reported one-half of the income and expenses from the business properties as reflected by the draft Schedule F. One-half of the expenses totalled $ 358,149. The $ 358,149 in business expense deductions which petitioner claimed on her Federal income tax return for 1979 were disallowed entirely by respondent because he determined they were attributable to the grape crop which was unharvested as of September 7, 1979. Respondent has since conceded that petitioner is entitled to $ 7,068 of the claimed deductions because such amount is not attributable to the unharvested grape crop. However, respondent maintains that $ 351,081 of the claimed deductions are attributable to the unharvested crop, and therefore disallowed by section 268. On his Federal income tax return for taxable year 1979, Bruno claimed a deduction in the amount of $ 461,355 as an expense of purchasing the unharvested *419 grape crop. Respondent determined that if the transaction at issue is a purchase and sale, Bruno properly claimed such deduction. However, if the transaction is a nontaxable division of community property, respondent determined, Bruno is not entitled to such deduction because he did not pay or incur an expense. The grape harvest began on July 15, 1979, and was completed on November 15, 1979. As of September 7, only 10 percent of the grape crop had been harvested. The harvested grapes were maintained in cold storage and sold during January and February of 1980. Respondent concedes that his determination with respect to petitioner's taxable year 1980 resulted from a mathematical error, and that determination is therefore not at issue. OPINION As a preliminary matter, we note that any gain that petitioner may have realized on the sale of her interest in the business properties is not at issue. The sole issue to be decided with respect to petitioner is whether certain claimed deductions are disallowed pursuant to section 268. Section 268 provides in relevant part that, where an unharvested crop sold by a taxpayer is considered under the provisions of section 1231 as "property used in *420 the trade or business," in computing taxable income no deduction attributable to the production of such unharvested crop shall be allowed, whether for expenses, depreciation, or otherwise. With respect to "property used in the trade or business," section 1231(b)(4) provides that an unharvested crop on land which is used in the trade or business and held for more than one year shall be considered as "property used in the trade or business" for purposes of section 1231 if the unharvested crop and the land are sold or exchanged at the same time and to the same person. The purpose of section 1231(b)(4) is to provide that certain sales of land together with an unharvested crop result in capital gains, rather than ordinary income. Beauchamp & Brown Groves Co. v. Commissioner, 44 T.C. 117, 122 (1965), affd. 371 F.2d 942 (9th Cir. 1967). The purpose of section 268 is to prevent the expenses attributable to the unharvested crop, which produced capital gain, to be deducted from ordinary income. Beauchamp & Brown Groves Co. v. Commissioner, supra.The disallowed expenses are added to the basis of the property which is sold, thus reducing the amount of capital gain recognized from the transaction. *421 Sec. 1016(a)(11). Respondent determined that the contested deductions are attributable to the production of an unharvested crop which is "property used in the trade or business," and therefore the claimed deductions are disallowed by section 268. Petitioner bears the burden of proving respondent's determination is incorrect. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933).
In order to avoid disallowance of the claimed deductions pursuant to section 268, petitioner must establish one of the following elements: (1) the unharvested grape crop was not sold by her, and section 268 is therefore inapplicable; (2) the land on which the crop was grown was not sold or exchanged by her, and the unharvested grape crop is therefore not "property used in the trade or business"; (3) the unharvested grape crop and the land were not sold at the same time, and the unharvested grape crop is therefore not "property used in the trade or business"; or (4) the claimed deductions are not attributable to the unharvested crop, and section 268 is therefore inapplicable. I. SALE OR DIVISION OF COMMUNITY PROPERTY
Petitioner argues that a division of community property took place, rather than a sale. Respondent *422 contends that petitioner sold her interest in the community property to Bruno. Respondent does not raise the issue of whether a division of community property, even though a nonrecognition transaction, should be considered a "sale or exchange" for purposes of sections 268 or 1231(b)(4). Cf. Beauchamp & Brown Groves Co. v. Commissioner, supra.Because we find that the transaction at issue was a sale, rather than a division of community property, we do not address that issue. Gain from the sale or exchange of property is generally recognized for tax purposes. Sec. 1002. However, with respect to the year in issue, [2] where community property is divided in a divorce proceeding so that each spouse takes as his or her separate property assets of the community equal in value to the community assets set aside for the other spouse, so that each spouse takes approximately one-half of all of the community property, the division of community property is regarded as a nontaxable event. Commissioner v. Mills, 183 F.2d 32 (9th Cir. 1950), affg. 12 T.C. 468 (1949); Davis v. Commissioner, 88 T.C. 1460, 1467 (1987). Such a partition is not a sale or exchange. Carrieres v. Commissioner, 64 T.C. 959, 964 (1975), *423 affd. per curiam 552 F.2d 1350 (9th Cir. 1977); Estate of Walz v. Commissioner, 32 B.T.A. 718 (1935). However, some transfers of community property are treated as taxable sales or exchanges. An equal division of the community property where one spouse gives his note or separate property for all or substantially all of the other spouse's community property set aside to him is a recognizing transaction. Carrieres v. Commissioner, supra; Edwards v. Commissioner, 22 T.C. 65 (1954). Where the whole of such a community asset is set aside to one spouse in such a taxable division, the transferor spouse is deemed to have sold or exchanged his community interest in the asset to the transferee spouse, and gain realized to such transferor equals one-half of any excess over the community's basis of the fair market value of the assets at the *424 time of the transfer; the transferee spouse's basis in the asset after the transfer equals one-half the original community basis plus one-half the fair market value of the asset. Johnson v. United States, 135 F.2d 125 (9th Cir. 1943); Carriers v. Commissioner, supra.
The transaction in the instant case did not involve a partition of each item of community property, nor was it a complete liquidation of the community property with a consequent division of the proceeds. Neither was it a division of the community property with the wife and husband each taking certain items in kind and of an approximately equal value. The fact that the settlement was "fair and equitable" is of no consequence. Edwards v. Commissioner, supra at 70. Factors which establish that the transaction was a sale, rather than a nontaxable division, are: (1) Bruno's offer to purchase petitioner's interest in the business properties was directed by the county court, and came at the request of petitioner; (2) the bargaining which preceded the acceptance of Bruno's counter-offer; (3) the October 16, 1979, judgment, prepared by petitioner's attorney, referred to the transaction as a "purchase and sale"; (4) Bruno's *425 attorney testified at trial that the transaction was intended as a purchase of petitioner's interest. In conclusion, we find that a sale, rather than a nontaxable division of property, took place. II. "PROPERTY USED IN THE TRADE OR BUSINESS"
An unharvested grape crop is "property used in the trade or business" under section 1231 if: (1) the unharvested crop is on land used in the trade or business; (2) the land is held for more than one year; and (3) the crop and the land are sold or exchanged at the same time and to the same person. Sec. 1231(b)(4). Petitioner concedes that the unharvested crop was on land used in the trade or business, and that the land was held for more than one year. In addition, we have found that both the crop and the land were sold to Bruno. Therefore, the only element still in issue is whether the crop and land were sold at the same time. Petitioner argues that the unharvested grape crop was sold on September 7, 1979, while the real properties were not sold until the closing of the escrow on May 12, 1980. As a preliminary matter, we note that California law provides that a husband and wife may convert community property to separate property by an oral *426 agreement. Such an agreement is an effective conveyance of real or personal property, and is not in violation of the Statute of Frauds. Woods v. Security First National Bank, 46 Cal.2d 697, 701, 299 P.2d 657, 659 (1956). Actions of the parties following the oral agreement which are consistent with its terms constitute evidence that it was executed. Cf. In re Raphael's Estate, 91 Cal.App.2d 931, 939, 206 P.2d 391, 395 (1949). The question of when a sale is complete is one of fact. All facts and circumstances are taken into account and the transaction is viewed in its entirety. Among the factors to be considered in determining when a sale is complete are the transfer of legal title and the shift of the benefits and burdens of ownership of the property. Generally, a sale is complete upon the first of these events to occur. Where passage of legal title is delayed to secure payment of the purchase price, as in the instant case, the intent of the parties as to when the benefits and burdens of ownership of the property are to be transferred becomes particularly relevant. Deyoe v. Commissioner, 66 T.C. 904, 910 (1976). We note that subsequent to September 7, 1979, petitioner was no *427 longer entitled to a monthly allowance from the business properties (any advances had to be repaid to Bruno), and that all payments for business liabilities, taxes, and insurance were made by Bruno. Thus, petitioner had relinquished the benefits, and was free of the burdens, of the business properties as of that date. In addition, we note that in the agreement reached on September 7, 1979, the parties did not distinguish between the sale of the unharvested crop and the underlying land. There is no indication whatsoever in the agreement that the crop and land were to pass to Bruno at different times. Viewing the transaction in its entirety, we find that the parties intended that Bruno assume the benefits and burdens of ownership of both the grape crop and the underlying land on September 7, 1979. The settlement agreement reached on that date constituted an effective present conveyance and sale, and nothing remained to be done other than the execution of deeds to clear the record title. III. ATTRIBUTION OF CLAIMED DEDUCTIONS
In cases where it is applicable, section 268 provides that no deduction "attributable to the production of such crop" shall be allowed. The regulations provide *428 that an item shall be treated as attributable to the production of the crop "whether they are for expenses, depreciation, or otherwise." Sec. 1.268-1, Income Tax Regs.
Respondent argues that the claimed deductions at issue are attributable to the production of unharvested crops within the meaning of section 268. Petitioner argues that most of the expenses at issue are attributable to business activities other than growing grapes. Taxpayers are required to maintain records sufficient to establish the amount of the deductions to which they are entitled. Sec. 1.6001-1(a), Income Tax Regs. In filing her Federal income tax return for taxable year 1979, petitioner chose to rely on a draft Schedule F prepared by Bruno's accountant. Given her interest in the business properties, petitioner could have demanded a more detailed accounting of the expenses. Instead, she reported the expenses at issue as farm expenses on Schedule F of her return. Having so reported the expenses, petitioner may not now argue that the expenses were attributable to non-farming activities without introducing evidence to support her claim. Petitioner argues that it is "probably impossible" to determine with precision *429 the amount of expenses which were attributable to the unharvested grape crop as of September 7, 1979. Petitioner then urges this Court to accept estimates of the amount of expenses not attributable to the crop. However, petitioner must carry her burden of proof by competent evidence, not by assumption and speculation. Wood Corp. of Delaware v. Commissioner, 22 B.T.A. 1182 (1931), affd. 63 F.2d 1023 (6th Cir. 1933). Respondent has conceded that $ 7,068 of the claimed deductions are not attributable to the grape crop. In addition, we have found that 10 percent of the grape crop had been harvested as of September 7, 1979. We therefore find that, in addition to the $ 7,068 conceded by respondent, petitioner is entitled to a deduction equal to 10 percent of her claimed deduction, or $ 35,814.90. Because petitioner has failed to introduce any competent evidence of the amount of expenses which are not attributable to the unharvested crops, we otherwise sustain respondent's determination that the claimed deductions in issue are disallowed pursuant to section 268. Because we have sustained respondent's determination that no element of the transfer of community property was a nontaxable *430 division of community property, we hold that Bruno correctly claimed a deduction for purchasing the grape crop on his Federal income tax return for taxable year 1979. In light of the foregoing, Decision in docket number 4933-88 will be entered for the petitioner. Decision in docket number 5098-88 will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Sec. 421 of the Tax Reform Act of 1984, Pub. L. 98-369, 98 Stat. 793, added new Internal Revenue Code sec. 1041. That section provides that no gain or loss shall be recognized on a transfer of property from an individual to a former spouse incident to a divorce. New sec. 1041↩ applies to transfers made after July 18, 1984, and thus is not applicable herein.